## SUPREME COURT.

PHILIP FRENCH and CHRISTOPHER HEISER *agt.* THE MAYOR, ALDERMEN and COMMONALTY of the City of New-York.

As between landlord and tenant, or lessor and lessee, the word "*improvements*," has a more comprehensive meaning than the word "fixtures," and includes the latter.

Therefore, where the lessee covenanted in the lease of Castle Garden, N. Y., at the expiration thereof to quit and surrender to the lessors the premises, "and all the improvements that may have been placed thereon by the" lessees, "which improvements are to belong to the" lessors, &c. *Held,* that such covenant included "gas pipes, burners, gas ladders, gas meters, lumber in hat room, batten doors, hinges and locks, floor of stage, large glass case, benches in gallery, benches under gallery, upholstered wood work, and canvass constituting the stage, gas pendant, under gallery, picket fence on the bridge leading to the garden, sheds on the north and south sides of the building, fixtures and ticket office, board fence on the north side of the building."

*General Term, July,* 1858.

ON the 28th of March, 1843, defendants leased to the plaintiffs the premises known as "Castle Garden," for eleven years from May 1st, 1843.

The lease contained this clause :—" And that on the last day of the said term, or other sooner determination of the estate hereby granted—the said parties of the second part, their executors, administrators or assigns, shall and will quit and surrender unto the said parties of the first part, their successors or assigns, the premises hereby demised, and all the improvements that may have been placed thereon by the said parties of the second part, their executors, administrators or

assigns, which improvements are to belong to the said parties of the first part, their successors or assigns, and all of which are to be so surrendered up in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

May 1st, 1854, the term of the plaintiffs under the lease aforesaid expired.

Before the expiration of their term, the plaintiffs began to remove " gas pipes, burners, gas ladders, and two large and one small meters, lumber in hat room, fifteen batten doors, hinges and locks, floor of stage, large glass case, benches in gallery, benches under gallery, upholstered wood-work and canvass constituting the stage, gas pendant, under gallery, picket fence on the bridge leading to the garden, sheds on the north and south sides of the building, fixtures and ticket office, board fence on the north side of the building."

An injunction was obtained by defendants, April 15, 1854, restraining the plaintiffs from removing or displacing any of these articles. The action was subsequently discontinued, and this action was brought by the plaintiffs to recover the value of the gas pipes, burners, &c., above mentioned. The complaint alleging that the defendants had wrongfully taken and retained the said property.

The cause was tried before Judge DAVIES, at the January circuit in 1857, and a verdict was taken for the plaintiffs for $4,431.25, subject to the opinion of the court.

WM. M. EVARTS *and* R. H. BOWNE, *for plaintiffs.*
RICHARD BUSTEED *and* A. R. LAWRENCE, JR., *for defendants.*

By the court—DAVIES, Justice. The question in this case is not, what are fixtures which a tenant is at liberty to remove on the expiration of his lease? but what did the lessees covenant with the lessors they would surrender and suffer to remain on the demised premises on the termination of the lease?

The covenants of the lease are, that on the last day of the

term the lessees will surrender the demised premises, " and all the improvements that may have been placed thereon by the said parties of the second part" (the lessees) ; " and which improvements are to belong to the said parties of the first part" (the lessors), " *and all of which* are to be surrendered up in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

The terms of the lease are, therefore, very broad, and would seem to comprehend all and every erection, improvement or addition made, put or erected upon said premises during the continuance of the lease. It was manifestly in contemplation of the parties to the lease, at the time of making it, that extensive improvements, changes or alterations were to be made by the lessees to adapt the demised premises to such uses and purposes as they might wish to put them to, and that these alterations and improvements were to be made at the expense of the lessees.

The lessors consented to such alterations and improvements, on condition that at the expiration of the lease they were to belong and become the property of the lessors; and the lessees, in consideration of such permission to make alterations, repairs and improvements, on the expiration of the lease, to surrender them up in as good state and condition as reasonable use and wear thereof would permit.

The covenant is to surrender *all* the improvements that may have been placed thereon. Improvements, clearly, in the lease here used, embrace every addition, alteration, erection or annexation made by the lessees during the demised term, to render the premises more available and profitable, or useful and convenient to them. It is a more comprehensive word than " fixtures," and necessarily includes it, and such additions as the law might not regard as fixtures. It would be difficult to select a more comprehensive word; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded.

Such, we think, is the view taken by the common pleas of

NEW-YORK PRACTICE REPORTS. **223**

French agt. The Mayor, &c., of New-York.

England in a case not dissimilar to the present. (*West* agt. *Blakeway*, 2 *Manning & Granger*, 727.

In that case the tenant had covenanted to yield up at the expiration of his term, all erections and improvements erected, made, or set up during the term; and it was held that this covenant was broken by the removal of the sashes and framework of a green-house erected during the term, the framework of which was laid upon walls built for the purpose of receiving it, and embedded in mortar thereon.

The judges thought the parties had purposely adopted the words, "erections and improvements" for the very purpose of avoiding all discussions as to what might be considered as coming within the description of a fixture.

It is very apparent that the court, in this case, did not place their judgment on the assumption that the green-house was a fixture, but on the covenant to surrender all erections and improvements, and that those words were more comprehensive than fixtures.

We think the parties in this case intended, the one to surrender, and the other to receive and accept at the termination of the lease, all the improvements which should be placed thereon by the tenants during the lease, and that such improvements embraced all additions, erections or alterations made by the tenants during the term, and such as were used by them in the enjoyment of the lease.

On its expiration, they become the property of the lessors, and they had a right to retain them.

It is difficult to see upon the principles here enunciated, that any of the articles enumerated in the complaint in this action, are not embraced in the covenants of the plaintiffs to surrender them. If any of them are not, then the plaintiffs will be entitled to recover for such, and such only.

A new trial must be had, costs to abide the event.