## CALDWELL'S CASE.

1. In a contract made for the transportation of military supplies and stores in the Western country, and in the presence of actual war, between the military department of the government and a private party, the terms " posts, depots, and stations" are to be taken in their military sense and not in the sense of railway posts, depots, and stations.
2. When such a contract speaks of military posts or depots on the west bank of a river, posts, one of which is 92 miles west of the river, and another 132 miles, and a third 191 miles, cannot be considered as within the designation.

APPEALS from the Court of Claims.

Caldwell sued the United States to recover damages for the breach of a transportation contract, dated March 12th, 1866; the government then being at war with Western Indians. The articles on which the points in dispute arose were thus:

" ARTICLE I. The said Caldwell shall receive at any time, *in any of the months from April to September*, inclusive, during the year 1866, from the officers or agents of the quartermaster's department at Forts Leavenworth and Riley, in Kansas; at Fort Kearney, Nebraska Territory; Fort Sedgwick, Colorado Territory; Fort Laramie, Dakota Territory; and at any points or places at which *posts* or *depots* shall be established during the continuance of this contract, ON the west bank of the Missouri River, north of Fort Leavenworth and south of latitude 42 degrees north, all such military stores and supplies as may be offered to him for transportation . . . by the officer of the quartermaster's department, at any or all of the above points or places, and transport the same with dispatch, and deliver them . . . to the officer of the quartermaster's department on duty at any of the *posts* or *depots* which *are now or may be hereafter established* in the Territory of Colorado north of 40 degrees north, and at Denver City, and in the Territories of Nebraska, Dakota, Idaho, and Utah, south of latitude 44 degrees north, including Fort Reno, and east of longitude 114 degrees west of Greenwich.

" ARTICLE II. The said Caldwell agrees . . . to transport un-

der this agreement, from the posts, depots, or stations named in Article I, or from and to any other posts, depots, or stations that may be established within the district named in said article, any number of pounds of military stores and supplies, from and between 100,000 lbs. and 10,000,000 lbs. in the aggregate.

"ARTICLE XI. The said Caldwell shall transport all the military stores and supplies for which the quartermaster's department may require wagon transportation by contract, on the route specified by this agreement, during the year 1866, provided the weight of such military stores and supplies shall not exceed, in the aggregate, 10,000,000 lbs.; yet nothing herein shall be so construed as to forbid or prevent the United States from using its own means of transportation for such service, whenever it may be deemed advisable to do so."

The case, as found by the Court of Claims, was thus:

At the date of the contract the only military posts on the west bank of the Missouri River, within the said district, were Fort Leavenworth, in Kansas, and Omaha, in Nebraska Territory.

On or before the 30th day of March, 1866, the president of the Union Pacific Railroad advised the Quartermaster-General that the company had sixty miles of their line completed west of Omaha, and that the company expected to complete the first hundred miles by the 10th of June.

In the summer and autumn of 1866 the railroad company had extended their line westward to Columbus, Lone Tree, and Kearney's Station, and it offered to the United States a more expeditious and cheaper mode of transportation than wagon transportation.

In the summer of 1866 the United States had collected at Omaha military stores and supplies, intended for the supply of posts west of the Missouri River, and within the district covered by the contract with Caldwell, and in the year 1866 they sent by the said railroad quantities of the said stores and supplies from Omaha to Columbus, Lone Tree, and Kearney's Station, the successive termini of the railroad as it was extended westward.

In the month of June, 1866, the United States contracted

with one Kountze for the transportation of the said stores and supplies from Columbus, Lone Tree, and Kearney's Station to Fort McPherson, Fort Laramie, and Fort Kearney, and Kountze, under the said contract, and in the year 1866, performed the transportation; that is to say, from April to September, 1866, he transported 2,945,484 lbs., and in October transported 693,964 lbs.

Previous to the delivery of the said military stores and supplies to the railroad company, and before the making of the said contracts with Kountze, Caldwell was prepared, and gave notice to the United States of his readiness to transport them, under and according to his contract.

Previous to the delivery of the stores and supplies to Kountze, but after the making of the said contracts with him, Caldwell was prepared and claimed of the United States the right, under his contract, to transport them from the termini of said railroad to such places, within his contract, as the United States might designate.

No notice was given by the United States to Caldwell, under his contract, to transport the military stores and supplies transported by said Kountze. But on the 11th of June, 1866, he received notice from the United States that transportation, under his contract, would not be needed.

The cost of the transportation of the said stores and supplies delivered to Kountze in any of the months from April to September, inclusive, would have been to Caldwell $1.45 per 100 lbs. per hundred miles.

The Court of Claims, holding that the expression "posts and depots on the west bank of the Missouri River," &c., was not confined to posts and depots "on the water-line of the river," but was used "merely to denote the most easterly line of the district covered by the contract," and that the terms "posts, depots, or stations" did not, of necessity, mean *military* posts, depots, or stations, awarded to Caldwell $35,689.01, as damages for the failure to deliver 2,945,484 lbs. of supplies, which were transported from Omaha to Columbus, to Lone Tree, and to Kearney Station by rail, and thence to Fort McPherson, Fort Laramie, and Fort

Reno by wagon, between the months of April and September, 1866. But holding that the clause in Article XI, by which it was agreed that Caldwell should transport all the military stores and supplies for which the quartermaster's department might require wagon transportation, &c., "during the year 1866," was only a provision for additional transportation that might be required in other months than those from April to September, previously specified, and under another contract than this to be made, the court limited the recovery to transportation during the months from April to September, 1866, inclusive, and refused to allow damages for the failure to deliver for transportation the supplies which were carried in October, 1866. The United States appealed from the first branch of the judgment, and Caldwell from the latter part.

*Messrs. Durant and Horner, for the claimant, Caldwell; Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice HUNT delivered the opinion of the court.

In the view we have taken of the case, it is unnecessary to consider a question largely discussed in the court below, and in the briefs of counsel here, to wit, whether the contract, although not in terms containing a stipulation binding the United States to deliver to the claimant all the stores and supplies it desired to transport between the points mentioned, was to be construed as having that effect. Our decision of the case rests upon other grounds, which are reached upon the assumption that the claimant is right in his construction of the contract, in that respect, but do not at all depend upon it.

By the second article of the contract of Caldwell, the claimant, he undertakes to transport "from the posts, depots, or stations named in Article I," or from "any other posts, depots, or stations that may be established" on the west bank of the Missouri River, any number of pounds of supplies not exceeding 10,000,000 lbs. in the aggregate. The posts named in Article I are, Forts Leavenworth and Riley,

in Kansas; Fort Kearney, Nebraska; Fort Sedgwick, Colorado; Fort Laramie, Dakota. The district named in said article within which other posts may be established is, the west bank of the Missouri River, north of Leavenworth and south of 42 degrees north latitude.

The posts from which the supplies were sent, which, it is said, should have been delivered to the claimant, were not those named in Article I, or either of them. They were Omaha at the outset, or starting-point, and Columbus, Lone Tree, and Kearney Station (not Fort Kearney), as the intermediate points from which wagon transportation was taken. These three points were railroad stations on the Union Pacific Railroad, and they were points to which the road was, from time to time, sufficiently completed for the purposes of railroad travel or transportation.

The judgment of the Court of Claims is based upon the theory that the expression in the contract, " posts, depots, or stations," includes railway depots or stations; that when a depot or station was established upon the Pacific road, as its construction advanced westwardly, such point became a post or station within the meaning of the contract. We are of the opinion that this was not the intention of the parties, but that military posts or stations alone were intended by them.

The contract was intended to aid the government in the transfer of its stores and supplies from one military post, station, or depot to another. While the same words in a contract, the subject-matter of which respected goods to be transported for individuals, and in time of peace, might be construed as claimed, such is not their fair and natural meaning in the contract we are considering. The term " post," in this instrument, means a military establishment where a body of troops is permanently fixed; " station " means a place or department where a military duty is to be discharged, or the synonym of " depot," a place where military stores or supplies are kept, or troops assembled. To apply them otherwise would, we think, be giving a forced construction to language used in the presence of actual war,

in reference to military stores, and in reference to their transportation from one military position to another, as the necessities of the army should require.

Columbus, Lone Tree, and Kearney are not " on the west bank of the Missouri River," and the contract limits the other posts, stations, or depots that may be established to that locality. The record shows that from Omaha to Columbus is ninety-two miles, to Lone Tree is one hundred and thirty-two miles, and to Kearney Station is one hundred and ninety-one miles, and there is no evidence that the Missouri River is, at any other point, nearer to the places named than is thus indicated. It would be quite a latitudinarian construction that would hold that these places are " on the Missouri River." The specifications of the points of departure are minutely described in Article I, and cannot be enlarged by the looser language used in Article III, where another subject is provided for, and the points of departure are mentioned in an incidental manner only.

The supplies now under consideration, it will be observed, were shipped from Omaha as the first or original point of departure. Omaha is situated on the west bank of the Missouri River, and was a station, or depot, where military stores and supplies were collected, and where troops were assembled at the time the claimant's contract was made. It is, nevertheless, not a point from which the supplies that were to be forwarded, were by the contract to be delivered to the claimant. Those points were the places named, to wit: Forts Leavenworth, Riley, Kearney, Sedgwick, and Laramie; the station, or depot, of Omaha not being named. Nor can it come under the words " at such points or places at which posts or depots shall be established during the continuance of this contract, on the west bank of the Missouri River," as it was a post, or depot, established long before the making of the contract, and was in full operation as a post or station when the contract was made.

The reason for this careful omission of Omaha, both from the expressed points of departure and those afterwards to be formed, is found in the fact that it was the eastern terminus

of the Union Pacific Railroad. The building of this road was then going on. It was well known to the United States authorities that it would be rapidly extended westwardly, and that it would be a speedy and cheap means of transporting its supplies. The contract with the claimant required the supplies to be transported at the rate of ten miles a day with mule trains and fourteen miles a day with ox trains, and at the expense of $1.45 per 100 lbs. for every hundred miles. The train upon the railroad would carry the supplies the same distance in an hour, and the expense would be diminished nearly as much as the speed would be increased. All this was well known to both parties. Hence when the road was completed to Columbus it was used by the government for that distance, and when successively completed to Lone Tree and Kearney, it was used to those places. That the United States under such circumstances intended to deprive itself of the power to use this new and more useful mode of transportation can scarcely be credited. It has not done so in terms, and, we think, that there is no fair reason to suppose that it has done so by implication.

The whole matter results in this: The government is responsible in damages if it has sent its supplies through other parties than the claimant from the posts of Leavenworth, Riley, Kearney, Sedgwick, or Laramie, or from other stations or posts thereafter established on the west bank of the Missouri River. The points from which it is proved to have sent supplies by other means than through the claimant are not among those named, nor are they military posts, nor are they on the west bank of the Missouri River. Omaha is not among the posts named, nor is it one established after the making of the contract. Hence there has been no breach of the contract, and there is no liability in damages.

The judgment awarding damages in the sum of $35,689.01 is REVERSED, and the case is remitted to the Court of Claims, with directions to

DISMISS THE PETITION.