CONKLIN v. THE CITY OF KEOKUK.

1. **Cities and Towns:** DAMAGES FOR CHANGE OF GRADE OF STREETS: APPEAL: NOTICE. Where an appeal is taken from an order of a city council confirming an appraisement by commissioners of damages to a property-owner on account of a change in the grade of a street, the notice of appeal must be given to the mayor, (Code, § 469,) and it is immaterial whether it is directed to the city, or to the mayor as such, or simply to the person who is in fact mayor.

2. **Appeal:** PRACTICE: QUESTION NOT RAISED BELOW. A motion by the defendant in the lower court to dismiss the appeal to that court was based on the fact that the notice of appeal ran to the mayor in his individual, rather than in his official, capacity; but the objection that the person notified was not shown by the record to have been the mayor was not raised. *Held* that it could not be first raised on appeal to this court.

3. **Parties to Actions:** DAMAGE TO REAL ESTATE BY CHANGE OF GRADE OF STREET. When a city council confirms the appraisement by commissioners of the damages to be awarded to a property-owner on account of the change of the grade of a street, the right to be compensated at once becomes a personal claim in favor of the owner of the property; and where he appeals from the order of confirmation, and dies pending the appeal, the claim passes to his administrator, and he may be substituted in his stead in the appellate proceedings. (*Hempstead v. City of Des Moines*, 63 Iowa, 36, distinguished.)

4. **Jurors:** CHALLENGE OF TAX-PAYERS BY CITY. A challenge to a juror by a city, on the ground that he is a tax-payer of the city, should be overruled, because his interest as a tax-payer is to favor the city in the action. (*Cramer v. City of Burlington*, 42 Iowa, 315, distinguished.)

5. **Cities and Towns:** CHANGE OF GRADE OF STREET: PROPERTY ON INTERSECTING STREET. First and Second streets in the defendant city run parallel with each other, and Bank street intersects them. The city lowered the grade four and one-half feet at the intersection of Bank and First streets, but did not in terms alter the grade of Bank street between First and Second. But *held* that the alteration of the grade of Bank street was a necessary consequence, and entitled an owner of lots abutting on that street, between First and Second, to compensation for damages.

6. ————: IMPROVEMENT OF PROPERTY ACCORDING TO ESTABLISHED GRADE OF STREET: WHAT IS: QUESTION FOR JURY. City property is improved according to the established grade of the street upon which it is situated, in contemplation of § 469 of the Code, (allowing damages for injuries caused by a change of the grade,) whenever it is so improved that it can be comfortably and conveniently used for

the purpose to which it is devoted while the street upon which it abuts is maintained at that grade. If the property is so adapted, with or without change, the owner is entitled to be compensated for any injury accruing to him by reason of a subsequent alteration of the grade of the street. Whether it is in fact so adapted is a proper question for the jury. [SEEVERS, J., *dissenting*.]

7. ——: ——: ——: INSTRUCTION. In an action to recover damages for the change of a grade of a street, the court instructed: " If C. intentionally built his improvements above the grade line as established by the ordinances of the city, this would be building according to the established grade, and with reference thereto, and to correspond with it, within the meaning of the law." *Held* erroneous, because it discarded the material question whether the buildings could have been comfortably or conveniently used while the street was maintained at that grade.

## *Appeal from Lee Circuit Court.*

### FRIDAY, DECEMBER 9.

O. S. Conklin in his life-time was the owner of lots 1, 2, 3, 4, 5 and 6, in block 16, and lots 7, 10, 11 and 12, in block 15, in the city of Keokuk. The blocks are bounded on the south and north by First and Second streets, and Bank street lies between them. In 1856 the city passed an ordinance establishing the grade of these streets; and while that ordinance was in force the lots were improved by the erection thereon of certain buildings. Afterwards another ordinance was passed, which establishes the grade, at the intersection of Bank and First streets, four and a half feet lower than the grade established by the ordinance of 1856. Commissioners were appointed as provided by statute to assess the damages which property owners would sustain in consequence of this change of grade. The commissioners made an appraisement of Conklin's damages, which the city council confirmed, and from the order of confirmation he appealed to the circuit court. While the proceeding was pending in the circuit court, Conklin died, and the present plaintiff, Sarah A. Conklin, who is the administratrix of his estate, was substituted by order of the court. The trial in the circuit court resulted in the award of damages materially greater than that made by the commissioners. The city appeals.

*Anderson, Davis & Hagerman*, for appellant.

*Craig, Collier & Craig*, for appellee.

REED, J.—I. The notice of the appeal from the order confirming the appraisement of the damages by the commissioners was directed to "the Honorable George D. Rand, Mayor of the city of Keokuk," and the following acceptance of service was indorsed on it: "I hereby accept service of the above notice this 22d day of June, 1883.

"GEORGE D. RAND, Mayor."

The city filed a motion in the circuit court to dismiss the appeal, because of the alleged insufficiency of the notice, but the motion was overruled. The point urged in support of the motion is that the notice runs to said Rand in his individual, rather than in his official, capacity. The provision under which an appeal in a proceeding of this character may be taken is found in section 469 of the Code, and is as follows: "Any person interested may appeal from the order of confirmation to the circuit court of the county in which such city or town is situated, by notice in writing to the mayor, at any time before the expiration of twenty days after the entering of the order of confirmation." Under that provision the notice of appeal must be given to the mayor. If a notice sufficient in form is given to the person who holds the office of mayor, it is immaterial, we think, how it is directed, or by what title he is designated. A notice directed to the mayor, the city, or to George D. Rand, if he as a matter of fact was mayor, would have answered all the purposes of the law.

It is urged, however, that there is no evidence in the record that Rand was mayor at the time. The motion, however, makes no question of that kind. The ground upon which it asked the court to dismiss the proceeding was that the notice was directed to Rand in his individual capacity, and not that he was not in fact

mayor of the city.   Defendant is not now entitled to have that question considered.

II.   The city objected to the substitution of the administratrix as plaintiff.   It was proven on the trial that Conklin left surviving him a widow and four children, all of whom resided in Lee county, and were of full legal age; and it is insisted that upon the death of Conklin they, and not the administratrix, were the parties in interest, and should have been substituted.   If it can be said that the injury which was to be compensated by the damages awarded in the proceeding had already occurred when Conklin died, it would be clear that the right to compensation was in the nature of a personal claim in his favor, which, like any other personal property, would descend to the administratrix.   But if, on the other hand, the damages will accrue only when the physical change in the grade is made, and the object of the proceeding is to determine in advance the amount which will be a just compensation for the injury, when it occurs, it is equally clear that the owners of the realty are necessary parties to the proceeding.   It was held by this court in *Hempstead v. City of Des Moines*, 63 Iowa, 36, that the right of action for the recovery of damages on account of a change of grade in a street arose, not when the ordinance making the change was passed, but when the physical change of the surface of the street was made. In that case, however, the city, after passing the ordinance, proceeded at once to reduce the street to the established grade.   No proceedings were had, in advance of the work, to ascertain the extent of the injury which the property would sustain in consequence of the change, or to compensate the owner therefor.   The rule laid down in the case is founded on that state of facts, and it is not necessarily applicable in a proceeding of this character.   When the commissioners returned their appraisement to the city council, that body had the power, at its discretion, to either annul or confirm the award.   (Code, § 469.)   If they had elected to annul

*[margin note:* 3. PARTIES to actions: damage to real estate by change of grade of street.*]*

the appraisement, the whole proceeding would have been at an end. No rights would have accrued, and no liabilities would have been incurred by it. But when the council confirmed the appraisement, the city acquired the right, upon the payment or tender of the damages, to reduce the street to the new grade. By that act it determined that it would make the physical change necessary to conform it to the grade. Having thus acquired the right to do the act which would occasion the injury to the property, and having fully determined that it would exercise that right, the damages accrued from that moment. From that time nothing remained to be done except to ascertain the amount. The right to be compensated constituted a claim in favor of the owner of the property.

III. The city challenged for cause a number of persons who were called as jurors in the case, the ground of the challenges being that the jurors were tax-payers in the city, but the challenges were overruled.

**4. JURORS: challenge of tax-payers by city.**

It was held in *Cramer v. City of Burlington*, 42 Iowa, 315, that a challenge by the plaintiff for the same cause was properly sustained. The ground of the holding is that, as the tax-payer would be compelled ultimately to contribute to the payment of any judgment which might be rendered against the city, he was directly interested in the result of the action, and his interest was of such a nature that the adverse party ought not, in justice, to be compelled to accept his judgment in the case. But that reason can have no application when the challenge is by the city. The tax-payer has no interest adverse to the city to be affected by the litigation. The right of challenge is allowed the parties as a means of protecting their interests. But it is not a ground of challenge by one party that the juror has an interest adverse to that of the other.

IV. Each one of the lots fronts on Bank street. Those

in block 16 are improved together, and constitute a single

**5. CITIES and towns: change of grade of street: property on intersecting street.** property, which extends from First to Second street, and is bounded on two sides by those streets. Lots 11 and 12, in block 15, also con- stitute a single property, which is bounded on one side by First street. Lots 7 and 10, in block 15, are sep- arately improved, and constitute separate properties. Lot 7 fronts on both Bank and Second streets. But lot 10 fronts only on Bank street. The jury found that lot 7 was dam- aged to the extent of $30, and lot 10, $250, by the change of grade. It was urged that neither of these properties is upon the street the grade of which was changed, and hence these amounts should be excluded from the award. This claim is based upon the fact that the ordinance of 1883, while it establishes the grade at the intersection of First and Bank streets, does not, in express terms, change the grade of the latter; and it is contended that it is not changed. But there can be no doubt that it was the intention of the city, by the ordinance, to change the grade of that street, and we think it has the effect necessarily to change it. First and Second streets are parallel with each other, and Bank street intersects them at right angles. The ordinance, while it lowers the grade of First street four and a half feet, does not change Second street. Now, the lowering of First street necessarily has the effect to change the grade of the connect- ing streets between it and Second.

V. The natural surface of the lots in block 16 is some sixteen feet above the grade of Bank street, as established by

**6. ——: improvement of property ac- cording to es- tablished grade of street: what is: question for jury.** the ordinance of 1856. It is also above the grade of First and Second streets. The buildings erected on that property were placed upon the natural surface of the ground, and the lots were not cut down or sloped to the lines of the streets. The natural surface of the lots in block 15 was also above the grade of the streets as established by that ordinance. When they were improved they were cut down considerably,

but not to the level of the streets, and the foundations of the buildings are several feet above the grade lines. The Bank street front of lots 10, 11 and 12 was protected by a stone wall, and there were stairways from the street up to the buildings. The statute affording the property owner a remedy for the injury occasioned by a change of grade, (Code, § 469,) provides that "when any city or town shall have established the grade of any street or alley, and any person shall have built or made any improvement on such street or alley *according to the established grade* thereof, and such city or town shall alter such established grade in such a manner as to injure or depreciate the value of said property, said city or town shall pay to the owner or owners of said property so injured the amount of such damages."

It was left to the jury to determine whether the improvements in question were made according to the grade established by the ordinance of 1856. Counsel for appellant contended that it should be determined as matter of law that those on block 16 were not so made. They have not claimed that it is essential that the whole property should have been lowered to the level of the street, or even that the foundations of the buildings should have been placed as low as the grade line. But their position is that the improvements cannot be regarded as having been made " according to the established grade," unless some part of the property was brought to the level of the street, or something else was done to conform it to the grade; such as the erection of a wall upon the front, the sloping of the ground to the grade line, terracing it, or the like. The question depends upon the force and effect of the words, " according to the established grade," in the statute. The statute should be liberally construed, with the view of giving effect to the legislative intent. It was enacted with the view of affording relief in a class of cases in which very great injuries are sometimes inflicted upon property owners, and for which, in the absence of statute, they were without remedy. We agree with counsel that, to entitle

a party to relief under the statute, it is not essential that his buildings should have been erected on the level of the street, for it would often be impracticable to build upon that level. Much desirable property can be found in almost any town or city in the state which is so situated that it can be com-fortably and conveniently used for residence or other pur-poses without reducing it to the grade of the streets upon which it abuts; and to hold that the owners of such prop-erty are without remedy for the injury which changes in the grade of the street would cause to it, because they had not placed their improvements upon the level of the street, would be to place a very narrow construction upon the statute. We think property is improved according to the established grade of the street, within the meaning of the statute, whenever it is so improved that it can be comfortably and conveniently used for the purpose to which it is devoted, while the street upon which it abuts is maintained at that grade. The only object which the owner could have had in view in construct-ing any of the improvements, which counsel contend were necessary in this case to conform the property to the grade, would have been to facilitate the use of the property in con-nection with the street. But if the circumstances were such that it could be comfortably and conveniently used without such additional improvements, there was no necessity for making them. The property in that case was adapted to the grade without them. The question, then, is one of fact, and was properly submitted to the jury.

VI. The circuit court gave the following instructions: " If Conklin intentionally built his improvements above the grade line as established by the ordinances of the city, this would be building according to estab-lished grade, and with reference thereto, and to correspond with it, within the meaning of the law." By this instruc-tion the question whether the improvements were made according to the grade depends entirely upon whether they were intentionally built above the line. Under it, the ques

tion whether the buildings could have been comfortably or conveniently used, while the street was maintained at that grade, is entirely immaterial. The instruction is erroneous, and could hardly fail to be prejudicial. As we must reverse the case on this ground, we do not consider other questions argued by counsel. They are not deemed of general importance, and may not arise on another trial.

REVERSED.

SEEVERS, J., dissents as to the fifth point of the opinion.