CLAPP v. CITY OF SPOKANE et al.

(Circuit Court, D. Washington, E. D. October 29, 1892.)

1. STREET RAILWAY—DAMAGE TO FRANCHISE BY CONSTRUCTION OF SEWER.
   The location of a sewer in a city street must be reasonable, with respect to the rights of a street railway, the construction of which was authorized by a prior ordinance, and whose property might be damaged by the construction of such sewer; and such location, if made in a part of the street occupied by the railway, so as to compel it to suspend operations, and inflict great damage upon it, is unreasonable, when other parts of the street are equally suitable for the sewer. But the city is not required to incur any additional expense by reason of having authorized the building of such road.

2. SAME—RIGHTS OF MORTGAGEE.
   A mortgage upon a street railroad is as much entitled to protection from unlawful injury by such action on the part of a city as any other kind of property.

3. CIRCUIT COURT—JURISDICTIONAL AMOUNT.
   An allegation by the mortgagee that such action will impair the value of his security to an amount exceeding $2,000 is sufficient to give jurisdiction to a federal circuit court.

4. MUNICIPAL CORPORATIONS—LOCATION OF SEWERS—VESTED RIGHTS.
   The constitution and General Statutes of the state of Washington provide that the people of cities may frame and establish a charter for the government thereof, and they also confer upon cities, in general terms, the powers of municipal corporations, and grant certain powers and impose certain restrictions, in specific terms, but do not contain any specific grant of power to locate sewers. After the rights of the mortgagee of a street railroad had become vested, a city adopted a charter containing a specific provision that the city should have power to locate sewers. *Held,* that such power existed only by virtue of the provision of the general statute giving cities power to control their streets, and provide for the health and general welfare of their inhabitants, and that its exercise must be reasonable with

reference to the rights of the mortgagee. City of Tacoma v. State, (Wash. St.) 29 Pac. Rep. 847, followed.

5. EQUITY JURISDICTION OF FEDERAL COURTS—NOT ENLARGED BY STATE LAWS.

If the mortgagee has an adequate remedy at law, by an action for damages, a suit in equity, though permitted by state laws, should not be entertained by a federal court.

6. SAME.

Where it appears, however, that the railway company is insolvent; that it will not be able to repair the damage or operate its road thereafter; that its property, after the construction of the sewer, would not be adequate security for the mortgage debt; that the bonds will be worthless as negotiable paper; and that the city, by reason of constitutional restrictions, is in such financial condition that a judgment against it would not be collectible,—a cause of equitable jurisdiction is made out, and an injunction pendente lite should issue.

In Equity. Bill by Robert P. Clapp, mortgagee of an electric street railway, against the city of Spokane and Rolla A. Jones to enjoin the construction of a sewer in such manner as to unnecessarily damage the railway, and obstruct its operation. On demurrer to bill. Sustained. An amended bill being filed pending consideration of the case upon a rehearing, showing that plaintiff would suffer irreparable injury by impairing the value of his security, an injunction pendente lite was granted.

Turner, Graves & McKinstry and Kinnaird & Happy, for complainant.

P. F. Quinn, for defendants.

HANFORD, District Judge. This is a suit for an injunction to prevent the city of Spokane from interrupting the operation of an electric street railway, upon which the complainant holds a mortgage, by constructing a sewer in one of the streets in which the railway is located. The railway is double tracked, and occupies the middle part of the street, having a single line of poles set in the space between the tracks, supporting crossbeams from which the wires are suspended. It is owned and being operated by a domestic corporation to which the city gave a franchise authorizing the construction of said railway with double tracks in the middle of said street, with a single line of poles between the tracks, and the operation thereof by the system adopted. It is now proposed to put a sewer in the center of said street, in such manner as to necessitate the taking down of said poles, and the obstruction of the tracks so as to prevent the operation of the railway during the time to be consumed in its construction; and by having the sewer in the center of the street the railway will be perpetually subjected to annoyances, by the making of excavations for the purposes of connecting with and repairing the same. The bill of complaint avers that, by taking the center of the street for the sewer, the railway property will be damaged, and the value of complainant's security impaired, which damage is wholly unnecessary; there being a space 43 feet wide in the street on the outside of each track. Upon the hearing of the demurrer to the bill, the defendants' counsel has, by argument and authorities, established these propositions: That a sewer in said street is essential to the public welfare, and the city has power to construct it; that the city has con-

trol of said street, and every part of it, and may, if necessary for the accomplishment of any public work which it is authorized to undertake, obstruct it, and suspend all travel therein; that the franchise for the railway is subordinate to the power of the city to control said street, and the city may even require the owner of it to remove the railway at its own expense, if necessary for the purpose of putting a sewer in said street.

While the power of the city is ample, it is also limited. The validity of its ordinances must be tested by the rule that reason must control its conduct, and the courts are required to shoulder the burden of deciding what is reasonable, whenever individuals complain of unreasonableness in the provisions of city ordinances affecting them, (1 Dill. Mun. Corp. [3d Ed.] §§ 319-321;) and, in the exercise of all the powers of a municipal corporation, the bounds of necessity and reason must not be overstepped, to the injury of private rights. Now, is it unreasonable and oppressive for the city, after having, by its ordinances, authorized the construction of this street railway, and designated the particular part of the street to be occupied by it, and after the complainant, induced by its grant of the franchise, has invested his money in bonds of the railway corporation, secured by said mortgage, with ample room elsewhere in the street, to so locate a sewer as to cause the greatest damage to the railway? I think that it is, and that the proposed action of the city is therefore an unlawful exercise of its power. There may be a sufficient reason for putting the sewer in the center of this street, which can be shown by the defendants when they answer the bill. But, as no necessity or reason appears from the statements contained in the bill, the demurrer cannot be sustained on this ground.

The bill avers that it is possible to construct a sewer in the center of the street without interfering with the railway. But, as the contrary is not alleged, I assume that it would be impracticable to do so, on account of the additional cost; and I have therefore treated this as an immaterial allegation. I hold that the city is not required to incur any considerable additional expense by reason of having granted a free right to the use of the street for this railway.

The amount of the damage to the plaintiff by reason of the impairment of the value of his security, to result from the threatened injury to the railway, is alleged to exceed the sum of $2,000. Therefore, there is no lack of a sufficient showing as to amount in controversy to entitle the plaintiff to sue in this court.

The authorities cited by defendants' counsel prove that a mere creditor of a corporation has no standing in court to litigate concerning the property of the corporation. But a mortgage upon property for the security of a debt is the property of the mortgagee, and as much entitled to protection from unlawful injury as any other species of property. Morgan v. Gilbert, 2 Fed. Rep. 835-838, and authorities therein cited.

The last objection urged is that a suit in equity for the causes alleged cannot be maintained, for the reason that the complainant has a plain, adequate, and complete remedy at law. That is to say, whatever injury may be done to him can be fully compensated in

damages. In my opinion, this objection is well founded. True, the laws of this state, as construed and declared by its supreme court, do not authorize a municipal government to take or damage private property without the owner's consent, and do entitle a property owner to an injunction to prevent injury to his property by city officers and agents. But, by express enactment of congress, the national courts are forbidden to entertain a suit in equity in any case where a plain, adequate, and complete remedy may be had at law; and the equity jurisdiction of these courts cannot be extended by state laws. Rev. St. U. S. § 723; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. Rep. 276. On this ground, the demurrer will be sustained

---

## ON REHEARING.
### (November 11, 1892.)

Both parties being dissatisfied with the foregoing decision, I have permitted them to make further arguments. In behalf of the city, it is asserted that, by its charter, the city is given specific power to locate sewers in its streets, and that the action of the city government in the exercise of this specific power is not subject to the power of the courts to pass judgment upon the reasonableness or unreasonableness thereof. The last proposition is well supported by authorities cited, including 1 Dill. Mun. Corp. §§ 328, 393; and it is true that the city charter does contain a provision declaring, in specific terms, that the city government has power to locate sewers in the streets of the city. But this charter was framed and adopted by the people of the city themselves, after the rights of the complainant had become vested. The constitution and a general statute of the state gave the people of Spokane power to frame a charter for their city, and conferred upon the city, in general terms, the powers of a municipal corporation, and also granted certain powers and imposed limitations in specific terms. I do not find included in the enumeration of powers granted any specific provision relating to the location of sewers. That the charter of a city, framed by the people thereof under the constitutional and statutory provisions of this state, cannot be regarded as a grant of power from the state, is, in my opinion, established by the decision of the supreme court of this state in the case of City of Tacoma v. State, (Wash. St.) 29 Pac. Rep. 847. I hold, therefore, that the power of the city to locate sewers, and provide for the construction thereof, exists only by virtue of the general grant from the state of power to control its streets, and provide for the health and general welfare of its inhabitants; and, in the exercise of such powers, it cannot unreasonably infringe individual rights without liability to be called to account in the courts. Counsel for the city also calls my attention to the case of Hawes v. Oakland, 104 U. S. 450, and relies upon it as an authority denying the right of an individual to maintain a suit in defense of the rights of a corporation. That case appears to have been instituted for the protection of the shareholders of a corporation by one of their number. This case is different. The complainant is a mort-

gagee of the property of the Ross Park Railway Company. His rights and title are not merged in the rights and title of the corporation. Though he has but a lien, that lien is his property, and a suit to protect it from injury by trespass involves a direct controversy between him and the trespasser.

On the complainant's side, the argument consists mainly of suggestions of difficulties and obstacles which may prevent a recovery of compensation for the destruction of his security in an action at law. The difficulties and obstacles, however, are not shown by averments in the bill to which the demurrer has reference. An amended bill having been presented to me, and the application for an injunction pendente lite being renewed pursuant to leave granted, I am of the opinion that it now appears that irreparable injury to the complainant is threatened. The amended bill shows that the railway company is insolvent; that it will be unable to repair the damage which will be done by constructing the sewer as proposed, or to again put its railway in operation; that the mortgaged property will not be of sufficient value, in the condition in which it will be left after the posts, wires, and tracks shall have been displaced, as proposed in the prosecution of the work of constructing said sewer, to produce, upon a sale thereof, more than a small fraction of the plaintiff's debt; that the threatened injury to his security will render his bonds unmarketable, and worthless as negotiable paper; that the city of Spokane is now in debt to an amount exceeding $1,700,000, and, by reason of constitutional and statutory limitations upon its powers to levy taxes, collect revenue, and incur debts, a judgment against it for the amount of the damages which the complainant will sustain by reason of the acts threatened will not be collectible. These new averments show that the complainant has no plain, adequate, and complete remedy at law. In my opinion, the amended bill must be answered, and the present application for an injunction must be granted.