THE DES MOINES CITY RAILWAY COMPANY, Appellant, v. THE CITY OF DES MOINES *et al.*

TEARING UP CAR TRACKS: INJUNCTION.

*Appeal from Polk District Court.*—HON. S. F. BALLIETT, Judge.

SATURDAY, MAY 12, 1894.

ACTION in equity to restrain the defendants from removing or otherwise interfering with part of the railway track of the plaintiff. There was a hearing on the merits, and a decree in favor of the defendants. The plaintiff appeals.—*Reversed.*

*Guernsey & Baily* for appellant.

*Hugh Brennan* and *J. E. Mershon* for appellees.

ROBINSON, J.—The plaintiff is a corporation organized and existing under the laws of this state, and owns, and is engaged in the business of operating, a system of street railways in the city of Des Moines. The system includes what is known as the "Eleventh and Twelfth Street Line," the "Clark Street Line," and the "Jefferson Street Line." The Clark street line is a prolongation of the Eleventh and Twelfth street line, and is a little more than two miles in length. The Jefferson street line is somewhat shorter. The portions of Des Moines reached by these lines contain a large number of people, many of whom depend upon the street railway for transportation to the business part of the city, and have no other convenient means of reaching it. The Eleventh and Twelfth street line extends on Twelfth street from School street to University avenue,—a distance of two thousand, five hundred and fifty-two feet,—

and is the part of the railway in controversy. It consists of a single track of two rails, placed in the center of the street, and has been in use for several years. In May, 1893, the city of Des Moines entered into a contract with Bryan & Youngerman for the construction of what is known as "Sewer number 2," which included a pipe sewer in Twelfth street where the railway in controversy is located. The city claims the right to construct the sewer in the center of the street, and to compel the temporary removal of the track for that purpose. The defendants Finkbine & Chase, as the board of public works of the city, have notified the plaintiff to remove its track to permit the construction of the sewer, and the plaintiff seeks to prevent all interference with the track. The district court dismissed the petition, and adjudged that plaintiff pay the costs of the action.

The plaintiff is the assignee and owner of the rights conferred upon the Des Moines Street Railway Company by an ordinance of the city of Des Moines passed in the year 1866, and of the railway system which has been constructed under that ordinance and the amendments thereto. Some questions arising under that ordinance were considered by this court in *Des Moines St. R'y Co. v. Des Moines B. G. St. R'y Co.*, 73 Iowa, 515, 33 N. W. Rep. 610, and 35 N. W. Rep. 602; *Id.*, 74 Iowa, 586, 38 N. W. Rep. 496. It was held in those cases, in effect, that the ordinance and its acceptance constituted a valid contract between the city and the street railway company. In securing the contract for building the sewers, the contractors believed it would be placed in the center of the street, and perhaps were authorized to act upon that belief, for the reason that most of the sewers of the city had been placed in the center of the streets through which they were constructed, and possibly for other reasons. The contract, however, did not specify in terms in what part of the street the sewer should be placed, excepting that it should be laid "according to the lines and grades furnished from time to time by the city engineer." The construction of sewer number 2 was commenced by the contractor, and progressed to Eleventh street. The plaintiff had a line of railway in the center of that street, and, when it was reached by the contractor, the plaintiff was asked to remove the track to permit the building of the sewer in the center. It agreed to do so on condition that the sewer on Twelfth street should be placed on one side of its track in that street. The proposition appears to have been assented to by the contractor and by Mr. Finkbine, of the board of public works. Thereupon the plaintiff caused to be prepared and submitted to the city council a resolution, of which the following is a copy: "Resolved, that hereafter, where pipe sewers are being put down in the several streets of the city of Des Moines where there is a single track for street railway purposes, such track being in the center of the street, the sewer shall be laid outside of the line of street railway, and on one side of the street; the side of the street to be determined by the board of public works." The resolution was adopted on the seventeenth day of July, and the plaintiff complied with its part of the agreement by removing its track in eleventh street.

The resolution was reconsidered on the twenty-second day of September, after this action was commenced.

It is said by the appellee that every franchise is accepted subject to the police power of the state, which can not be bartered away, and the appellant assents to that proposition. But it is claimed that the demand made by the city is unreasonable, and, therefore, should not be enforced. It is well settled that a municipal ordinance or by-law, to be valid, "must be reasonable, consonant with the general powers and purposes of the corporation, and not inconsistent with the laws or policy of the state," and that the courts may declare void, ordinances and by-laws which are not reasonable. *Meyers v. Railway Co.*, 57 Iowa, 557, 10 N. W. Rep. 896, and authorities therein cited; *Town of State Center v. Barenstein*, 66 Iowa, 249, 23 N. W. Rep. 652. See, also, *City of St. Louis v. Weber*, 44 Mo. 547; 1 Beach, Pub. Corp., section 512; 1 Dill. Mun. Corp., sections 319–322; *Ex parte Chin Yan*, 60 Cal. 82. An ordinance is unreasonable if it be partial, unfair, or oppressive in its effects, as by imposing a serious burden without adequate cause. *Id.; Ex parte Frank*, 52 Cal. 606; *Harrisburg City Pass. R'y Co. v. City of Harrisburg*, 24 Atl. Rep. (Pa. Sup.) 56. It is not shown that the sewer in question was located in the center of Twelfth street by ordinance; but, conceding that it was so located by action as formal, and entitled to as much weight, as an ordinance, we are required to determine whether that action was reasonable and valid. The ordinance of the year 1866 required that all single tracks be laid in the center of the streets in all cases when it should be practicable to so lay them. The railway in question was constructed according to that requirement, and a large amount of labor and material has been used, and much time spent, in making a good roadbed. The cost to the plaintiff of removing its track to permit the construction of the sewer, and replacing it after the sewer is constructed, including the making of a good roadbed, would be about three thousand dollars. It would require years to make as good and safe a roadbed as the one now under the track, and the tearing up of the track would cause great inconvenience to patrons of the road, and would necessarily reduce the receipts of the plaintiff during the time that the sewer was being constructed. The reasons urged for placing the sewer in the center of the street are, that nearly all of the sewers in the city are placed in the centers of streets, and those placed at the sides are few, and so placed for exceptional reasons; that the contract made for building the sewer required it to be located in the center of the street; that to change it to the side would cause great expense, delay, and inconvenience; that the city has at all times required water pipes to be laid at one side of the streets, and gas pipes at the other, and that the property owners at one side of the street would be at greater expense than those on the other to connect with the sewer, if it is placed at the side. The evidence shows clearly that the sewer can be placed outside of the line of the railway without impairing, in any respect, the efficiency of the sewer system, and that sanitary considerations do not require that it be placed in the center of the street. If the sewer is placed at the side, the increase of the cost of

making a single connection between the sewer and the property on the side of the street furthest away would not exceed three dollars. Whether the contract for the sewer requires that it be located in the center of the street we need not determine, as the contract provides that any change in the plans or specifications shall not work a forfeiture, and that the difference in cost caused by the changes shall be determined by the engineer and board of public works on the basis of the contractor's bid. The evidence shows that the expense of constructing the sewer at the side of the street need not be materially, if any, greater than to place it in the center. We are of the opinion that the reasons for placing it in the center of the street are not of sufficient importance to impose upon the plaintiff the burden of removing its track, and to expose the patrons of this line to the inconvenience and danger which would be caused by such a removal. In other words, we think the demand of the city is unreasonable. It is shown that, if the plaintiff will transfer its passengers at the point where the workmen engaged in constructing the sewer shall be at work, the cost of constructing it will not be materially increased, and the plaintiff avers its willingness to make such transfer. If required by the city, it will be provided for in the decree. It is said the plaintiff has an adequate remedy at law, but we think not. It has a right to protect its track and roadbed by an action of this nature. The decree of the district court is REVERSED.