Des Moines City Railway, Appellant, v. City of Des Moines et al., Appellees.

November 22, 1927.

Petition for Rehearing Dismissed March 6, 1928.

*Sargent, Gamble & Read,* for appellant.

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver,* and *George W. Vest,* for appellees.

*Lehmann, Seevers & Hurlburt,* for Stark, appellee.

STEVENS, J.—I. Appellant, the Des Moines City Railway Company, owns and operates a system of street railways in the city of Des Moines. Sixth Avenue extends from the center of  the principal business district of the city north across the Des Moines River to Highland Park, and perhaps to its northerly limits. On October 4, 1916, the appellee city adopted Ordinance No. 2525, which provides for the widening of Sixth Avenue from School Street to University Avenue, and for a change of grade therein between said points. No provision has been made by the appellee city to pay the expense necessary to be incurred by appellant in conforming its double-track street railway, located thereon, to the changed grade of said street.

Many propositions are earnestly argued by counsel, but the decisive questions which we deem it necessary to discuss may be briefly stated as follows: (a) Is a street railway an improvement *on* the streets of cities and towns of this state, within the legislative meaning of that term, as used in Section 785, Code of 1897? (b) If so, must provision be made by such cities or towns when it is desired to change the grade of any street traversed by the tracks of such railway company for the payment of the expense of conforming the same to the changed grade? (c) If negative answer is given to either, or both, of the foregoing propositions, is Ordinance No. 2525 so unreasonable and arbitrary as to be void and wholly unenforcible? Propositions (a) and (b) will be discussed together.

Prior to the enactment of Chapter 11, Laws of the Fourteenth General Assembly, hereinafter set forth, damages to abutting property resulting from the change of street grades were not recoverable in this state. *Creal v. City of Keokuk,* 4 G. Greene 47; *Russell v. City of Burlington,* 30 Iowa 262. The

original enactment, slightly changed, was carried into the Codes of 1873, of 1897, and of 1924. For convenience, these statutes are here copied in full:

"Whenever any city or town in this state, authorized by law to establish and regulate the grades of the streets and alleys of such city or town, shall have established the grade of any street or alley, and any person shall have *built or* made any improvements on such street or alley according to the established grade thereof, and *the city authorities* shall alter said established grade in such a manner as to injure or diminish the value of said property, said city shall pay, to the owner *or owners of said property* so injured, the amount of such damage or injury." Chapter 40, Section 1, Acts of the Fourteenth General Assembly.

"When any city or town shall have established the grade of any street or alley, and any person shall have *built or* made any improvements on such street or alley according to the established grade thereof, and *such city or town* shall alter said established grade in such a manner as to injure or diminish the value of *said property,* said city *or town* shall pay to the owner *or owners* of said property so injured the amount of such damage or injury." Code of 1873, Section 469.

"When any city or town shall have established the grade of any street or alley, and any person shall have made improvements on the *same, or lots abutting thereon,* according to the established grade thereof, *and such grade shall thereafter be altered* in such a manner as to *damage,* injure or diminish the value of such property *so improved,* said city or town shall pay to the owner of such property the amount of such damage or injury." Code of 1897, Section 785.

The more important changes therein are indicated by the italicized portions thereof. It will be observed that the damages allowed by each section of the various revisions of the statute are for injury or damage to improvements "on such street or alley." The change in the phraseology of Section 785, Code of 1897, by substituting the word "same" for "street or alley" is of no significance; but the words following the same,—that is, "or lots abutting thereon,"—are necessarily of some significance, and must be given weight in the interpretation of the statute.

It is fundamental in the construction of statutes that words and phrases will, if possible, be given their ordinary and usual meaning (*State v. Carson*, 147 Iowa 561; *State v. Read*, 162 Iowa 572), and that such construction as will give effect to every part of the statute, except when irreconcilable because of repugnance, will be adopted. *Des Moines City R. Co. v. City of Des Moines*, 152 Iowa 18; *McKinnon v. Sanders*, 161 Iowa 555; *Elks v. Conn*, 186 Iowa 48; *Model Laundry Co. v. Barnett*, 180 Iowa 55. It is also proper to consider legislative history in arriving at a proper interpretation of a given statute. *Des Moines City R. Co. v. City of Des Moines*, 152 Iowa 18.

The legislative history of the change made in Section 469 of the Code of 1873, by the enactment of Section 785 of the Code of 1897, throws little light upon the legislative purpose in adding the words "or lots abutting thereon." The Code commission, appointed by the legislature to prepare the revision of 1897, proposed the following, in lieu of Section 469 of the Code of 1873:

"When the grade of any street, highway, avenue, or alley shall have been established and any person owning property abutting on such grade shall have made permanent improvements thereon in conformity to such grade, and afterwards the city or town shall alter such grade in such a manner as to diminish the value of said property, it shall pay the owner thereof the damages so caused, which shall be assessed in the manner provided for condemning land for city purposes."

The report of the Code commission referring thereto merely states that:

"Damages for change of grade are to be assessed according to the provisions applicable in case of condemning land."

The statute, as finally enacted by the twenty-sixth general assembly, appeared as Section 64 of a joint committee substitute for a house bill involving the same subject-matter. Nothing further appears in any of the records of the Code commission or of the proceedings of the twenty-sixth general assembly.

The word "on," as used in Section 469 of the Code of 1873, was construed by this court in *Hempstead v. City of Des Moines*, 52 Iowa 303, as follows:

"V. It is said the improvement must be made *on* the street.

The statute evidently contemplates improvements upon lots which are situated on the street. The particle *on*, when used to designate a place, means at, near, adjacent to. This is obviously its import as used in the language of the statute under consideration.''

This interpretation is well supported by the language of this court in *Heath v. Des Moines & St. L. R. Co.*, 61 Iowa 11, and in numerous decisions of courts in other jurisdictions. *Sutton v. Commonwealth*, 85 Va. 128; *Caldwell's Case*, 86 U. S. (Wall.) 264; *Burnam v. Banks*, 45 Mo. 349; *Masters v. Mc-Holland*, 12 Kan. 17; *Bradley v. Bradley*, 3 L. R. P. Div. 47; *South Park Commissioners v. Chicago, B. & Q. R. Co.*, 107 Ill. 105.

*Richardson v. City of Sioux City*, 136 Iowa 436, was decided after the enactment of Section 785, Code of 1897. This was an action at law for damages resulting from a change in the grade of a street. The plaintiff had improved certain lots in Sioux City in conformity to an established street grade by the erection of buildings thereon, the construction of a retaining wall, and the planting of trees on the parking in front thereof. A somewhat more literal meaning was given the word ''on'' in this case than in our previous decisions. This was to meet the claim of the plaintiff that he was entitled to compensation for the loss or injury to shade trees planted and maintained by him on the parking in front of his lots. The court, in the course of its opinion in that case, said:

''It is within common knowledge that street parkings—that is, a space left between the curb line and walk, and quite universal in residence districts—are intended by the city, and in a sense dedicated, for the purposes of street and property adornment. Following the establishment of a grade, every abutting owner is invited, impliedly, at least, to improve such parking by sodding the space in front of his property, and by planting trees, etc., thereon. And, in doing this, he not only improves the street, but in a substantial sense his own property. It is not unreasonable, in our view, to say that such was in the mind of the legislature when providing that damages should be recoverable when the abutting owner 'shall have made improvements on the same (i. e., the street), or lots abutting thereon.' ''

It will thus be seen that the addition to Section 785 of the

words "or lots abutting thereon" was construed so as to give additional significance and meaning to the word "on." In arriving at its conclusion in the *Richardson* case, the court gave particular emphasis to the nature and character of the alleged improvement *on* the street. Parking is a part of a street not used by the public, but, in a somewhat distinct sense, set apart for the use and improvement of the owners of abutting lots by the planting of trees and shrubs thereon for the beautification of the public thoroughfare, as well as such lots. The word "improvement," as used in each of the foregoing legislative enactments, must also be given a somewhat technical meaning. The word has been defined by this court in arriving at a proper interpretation of statutes enacted for various purposes in this state. The definition given in *Chase v. City of Sioux City*, 86 Iowa 603, taken from various recognized authorities, was as follows:

" 'Improvement' is defined as 'increase; growth; progress; advance; valuable additions or betterments, as buildings, clearings, drains, fences, etc., on premises.' Webster's Dictionary. Also: 'A betterment; that by which the value or excellence of a thing is enhanced; a beneficial or valuable change or addition. * * * An improvement in real property is something done or added to it which increases its value, as cultivation, or erection of, or addition to, buildings.' Century Dictionary. 'Improvement is work done or things built or placed upon land, rendering it more fit for use, and more capable of producing income.' Abbott's Law Dictionary. 'An improvement is an amelioration in the condition of real or personal property, effected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes.' Bouvier's Law Dictionary. 'A valuable addition made to property, usually real estate, or an amelioration in its conditions, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value and utility, or to adapt it for new or further purposes.' Black's Law Dictionary. 'The word "improvement," as used in a lease, embraces every addition, alteration, erection, or annexation made by the lessee during the term for his use. It is more comprehensive than the word "fixtures," which is necessarily embraced in it.' *French*

*v. Mayor*, etc., 16 How. Pr. 220. 'In law, "improvements" is a term meaning changes in the condition of property by which its value is increased. It is usually employed in the plural form, and with reference to real property. Illustrations may be found in the erection of buildings upon land previously vacant, additions to buildings already upon land, the construction of sewers, the grading and paving of streets, the removal of obstructions to streams, the draining of swamps, the clearing of woodland, and many other changes by which the realty affected is made better.' 10 Am. & Eng. Encyclopedia of Law, 243. The words 'or made any improvements,' being used in addition to the word 'built,' it seems to us should be held to cover grading. It clearly comes within the definition given to the word 'improvements.' Grading enhances the value of the land; it makes it more useful; it the better adapted the lots for residence purposes."

The grading of a lot was held to be an improvement, within the meaning of the earlier statute, in *Conklin v. City of Keokuk*, 73 Iowa 343, and *Chiesa & Co. v. City of Des Moines*, 158 Iowa 343. In *Hoppes v. Baie*, 105 Iowa 648, a well was held to be an improvement, within the meaning of the mechanic's lien statute. A coal mine was held to be an improvement on land, within the meaning of a similar statute, by the circuit court of the United States for Alabama in *Central Tr. Co. v. Sheffield & B. C., I. & R. Co.*, 42 Fed. 106.

Are the tracks of a street railway company, laid upon the streets of a city or town, an "improvement" on such street, within the legislative meaning of Section 785, or as that term has been judicially defined? To improve real property means to grade, sod, and to prepare the same for the erection of sidewalks, buildings, and other structures necessary for the convenience and use thereof. The term "to improve a street," as defined by Section 5975 of the Code of 1924, means "grading, parking, curbing, paving, oiling [chloriding], graveling, macadamizing, or guttering the same or any part thereof, or by constructing electric light fixtures along same, and to repair such improvements."

Streets in incorporated towns and cities are parts of highways, and are laid out and established for the use of pedestrians and various kinds of vehicles customarily employed in traffic and

as instrumentalities of transportation. Street railway tracks in no respect conduce to the convenience of the public in the use of the streets by either pedestrians or those operating vehicles. This is true notwithstanding the fact that they are one of the great instrumentalities of transportation. The right of street railway companies to lay tracks and operate cars thereover *on* the streets of cities and towns is derived from a grant by such municipality. The use of the streets thereby rests upon contract. When the usual and ordinary meaning is given to the word "improvement," it can hardly be said that street railway tracks laid upon and traversing streets of cities and towns are to be included therein; and they are not, within the statute, an improvement of the street.

It is, however, clearly within the power of the legislative department of the state government to provide for the payment of damages to the owners of street railway systems resulting from the change of a street grade and the necessity of conforming its tracks thereto. Just all that the legislature may have contemplated by the addition of the words "or lots abutting thereon" in Section 785 it must be confessed is not very clear. The necessity of the change for the purpose of conferring a right upon property owners to recover damages for injuries caused to abutting lots by a change in the grade of a street was obviated by the holding of this court in *Hempstead v. City of Des Moines,* supra. This could hardly have been the purpose of the change. The improvement of parking in front of lots by the planting of shrubbery and shade trees thereon has been common in all cities and towns of this state for many years. Possibly the sole intent and purpose of the legislature were to provide compensation for improvements thus made *on* the portion of the street set apart to be used and improved by the owners of abutting lots. This we need not at this time determine. A strict construction of the language quoted from the *Hempstead* case might here create a doubt as to the right of a property owner to recover damages for injury to any improvement physically located on a street. If it is thus interpreted, the fundamental rules of construction referred to are strictly followed, and effect is given to every part of the statute, without the necessity of a strained or unusual meaning to the language thereof. Had it been the purpose and intention of the legis-

lature to include street railway tracks withi.1 the term "improvement," more apt language would certainly have been employed for that purpose. As ordinarily understood, the word "improvement" would not be employed to designate the tracks of a street railway company upon a public street in any city or town. They are, although a necessity, rather a burden than an improvement.

The following cases, cited to sustain the contention of appellant of a right to damages resulting from a change of the grade of a street, are not closely in point: *Chiesa & Co. v. City of Des Moines*, supra; *Rocho v. Boone Elec. Co.*, 160 Iowa 94; *Bismarck Water Supply Co. v. City of Bismarck*, 23 N. D. 352 (137 N. W. 34); *Paris Mountain Water Co. v. City Council*, 53 S. C. 82 (30 S. E. 699); *Lake Roland Elev. R. Co. v. Mayor*, 77 Md. 352 (26 Atl. 510). None of them involve the interpretation of statutes similar to Section 785 of the Code of 1897, nor did they involve questions of a similar character. The decision in the cases turned upon the interpretation of dissimilar statutes or contracts, or involved the application of legal principles not here to be considered. The decision of this case must, as we view it, turn upon the interpretation to be given the statute, and the issue tendered as to the validity of the ordinance in question. There is little in the cited cases to aid the court in arriving at a conclusion on either proposition. It seems to us that to give the statute the construction and effect for which appellant contends would require that a strained and unnatural meaning be given to the language thereof, and one not justified by the most heroic possible effort to fathom and express that invisible and indefinable thing called legislative intent.

II. Cities and towns are given power by statute to "establish, lay off, open, widen, straighten, narrow, vacate, extend, improve, and repair streets, highways, avenues, alleys, public grounds, wharfs, landings and market places within their limits." Section 751, Code of 1897. In the exercise of the power thus conferred, the councils thereof exercise a large discretion, and the right of injunction can seldom be invoked to prevent such exercise. *Young v. Webster City & S. W. R. Co.*, 75 Iowa 140; *Huston v. City of Des Moines*, 176 Iowa 455; *Henry v. Mason City & Ft. D. R. Co.*, 140 Iowa 201; *Kemp v. City of Des*

*Moines,* 125 Iowa 640. Nevertheless, the unreasonable and arbitrary exercise thereof may sometimes be restrained. *Snouffer v. Cedar Rapids & M. C. R. Co.,* 118 Iowa 287; *Des Moines City R. Co. v. City of Des Moines,* 90 Iowa 770; *Central Life Assur. Soc. v. City of Des Moines,* 185 Iowa 573. See, also, *American Tobacco Co. v. Missouri Pac. R. Co.,* 247 Mo. 374 (157 S. W. 502); *Clapp v. City of Spokane,* 53 Fed. 515; *Eastern Wisconsin R. & L. Co. v. Hackett,* 135 Wis. 464 (115 N. W. 376); *City of Seattle v. Columbia & P. S. R. Co.,* 6 Wash. 379 (33 Pac. 1048).

The proposal of appellee is to reduce the grade of Sixth Avenue and to widen the same for a distance of about 400 feet between School Street and University Avenue. The maximum reduction is 3 feet, 11½ inches. It is contended by appellant that the grade as it now exists is far less than that of other streets extensively used for traffic in said city, and that a change therein will not contribute to the safety or convenience of the public. With whether the proposed change in the grade is a wise one or not, the court is not concerned. It is incidental to and a part of a plan to widen Sixth Avenue at the point designated, and this court cannot say that it is so unreasonable and arbitrary as to be void. It is not enough that it may be ill-advised, and not required by the exigencies of travel. The power conferred upon the commission in the City of Des Moines is large, and courts will not undertake to limit or control its discretion in such matters. It is our conclusion that the ordinance is not void.

What we have said necessarily disposes of appellant's case, and further discussion is, therefore, unnecessary.—*Affirmed.*

Evans, C. J., and Faville and Wagner, JJ., concur.

Kindig, J., concurs in result, but does not agree to distinction between *Richardson* case and the case at bar.