## ELIAS LYMAN

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 25, 1902.*

1. ADULTERY—*adultery defined.* Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife, whether the latter is married or single.

2. SAME—*an indictment for adultery need not aver whether the woman was married or single.* An indictment charging a married man with adultery need not allege that the woman was married or single.

3. SAME—*offense may be laid in the indictment on a single day.* An indictment for adultery which charges the offense on a single day is sufficient, where the proof shows that the adulterous relation continued for a period of four weeks or longer.

4. SAME—*what sufficient proof that accused was married.* Evidence that the accused and a woman went through the marriage ceremony before a minister in the State of Vermont, that he pronounced them man and wife, and that afterward the parties came to Illinois, where they lived together for many years, raising a family of children, is sufficient proof of marriage *per verba de præsenti* without proof that the minister was ordained or authorized by the laws of Vermont to solemnize marriage.

*Lyman* v. *People,* 98 Ill. App. 386, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Henry county; the Hon. F. D. RAMSAY, Judge, presiding.

NELS F. ANDERSON, and WILSON & MOORE, for plaintiff in error.

H. J. HAMLIN, Attorney General, and EMERY C. GRAVES, State's Attorney, (E. S. SMITH, of counsel,) for the People.

Per CURIAM: In deciding this case the Appellate Court delivered the following opinion:

"Elias Lyman and a woman, whose first name was Alice and whose last name was unknown to the grand jury, were jointly indicted for living together in an open state of adultery. Apparently Alice was not apprehended. The proof was, she returned to Chicago when she ceased to live with Lyman. Lyman alone was placed on trial. His motion to quash was overruled as to the first four counts. He pleaded not guilty. A jury found him guilty under the second count. He interposed motions for a new trial and in arrest, which were denied. He was sentenced to imprisonment in the county jail for forty days and to pay the costs. He has sued out this writ of error to review said judgment.

"The second count, after laying the venue, charged that said Elias Lyman and the woman named Alice, on September 15, 1899, 'not then and there being married to each other, unlawfully, wrongfully and willfully did live, cohabit and have carnal intercourse together in an open state of adultery, he, the said Elias Lyman, then and there being a married man having a lawful wife, other than the said Alice, living, as he, the said Elias Lyman, and she, the said Alice, then and there well knew, contrary to the form of the statute,' etc. It is argued this does not charge Lyman with the crime of living in an

198—35

open state of adultery, for three reasons: First, because it does not charge that Alice was a married woman; second, because it charges that he had as wife both the other woman and also Alice, and hence it is either uncertain, or charges bigamy; and third, because the offense is charged to have been committed on a single day, only, without a *continuendo*, and that is legally impossible.

"Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife, whether the latter is married or single. (*Miner* v. *People*, 58 Ill. 59; Bouvier's and Anderson's Law Dictionaries, titles, 'Adultery.') The offense of the married person is adultery and of the unmarried person fornication. The second count does not in express terms aver whether Alice was married or single. It does aver that Lyman and Alice were not married to each other, that Lyman had a lawful wife then living, and that Lyman and Alice lived together in an open state of adultery. Alice could not have committed the offense of living in an open state of adultery with Lyman unless she had a lawful husband then living. In *Crane* v. *People*, 168 Ill. 395, the court said, on page 397, that the word 'adultery' has a well known meaning, which could not be misunderstood by a jury, and it is there implied that it was not necessary to explain in the indictment why the offense was adultery, instead of fornication. This indictment charges the offense against Alice in the language of the statute, and it is usually sufficient to state any criminal charge in the language of the statute. But Alice is not on trial, and we need not now determine whether she is sufficiently charged with a crime. It is not essential both guilty parties shall be indicted, and if they are jointly indicted it is not necessary both shall be tried. (Bishop on Stat. Crimes, sec. 708.) If Lyman committed the crime he could be indicted and punished even if his paramour were dead, so that the indictment could not run against her. It might readily happen that the grand jury could

not ascertain, nor the prosecution prove, whether the guilty woman was married or single. If the indictment averred in one count that she was married and in another that she was single, the prosecutor might be unable to prove which allegation was true, and if the allegation was material, as against the married man, the jury could not, in such a case, convict him under either count. Lyman was guilty of adultery if he had a lawful wife then living, if Alice was not that lawful wife, if Alice and he were not married to each other, and if he and Alice lived, cohabited and had carnal intercourse together in an open state of adultery. All this the indictment charged against him. In 2 McClain on Criminal Law (sec. 1094) it is said: 'Where the offense may consist in connection between a married man and a woman not his wife, whether married or single, it is unnecessary to allege the state of the woman in this respect.' We are of opinion the second count was sufficient in this particular as against Lyman.

"The argument that the words, 'he, the said Elias Lyman, then and there being a married man having a lawful wife, other than the said Alice, living,' mean that Alice also was his wife, is not based on what we conceive to be the natural meaning of the words employed, and we think it especially clear such is not their meaning here when considered in connection with the other words in the same sentence charging said Lyman and said Alice with 'not then and there being married to each other.'

"The offense is laid on a single day in the second count. If Lyman lived with Alice in an open state of adultery for four weeks or longer, as the evidence tends to prove, he was guilty of that offense on each day of the time. As to the allegation of time this count follows the precedent given in Cameron on Criminal Law, on page 19. In 2 McClain on Criminal Law, (sec. 1087,) speaking of living in a state of adultery, it is said it is not necessary the relation continue for any definite length of time; that

it may be sufficient that it is for a day, only, if it is with an intention of continuance. We are of the opinion the court did not err in overruling the motion to quash the second count.

"It is argued there is no sufficient proof that Lyman was legally married. There is proof by an eye-witness that on December 14, 1858, at Rochester, Vt., a marriage ceremony between Lyman and a woman was performed by Rev. Mr. Tracy, a Congregationalist minister of that place; that Lyman and the woman stood up; that the minister stood in front of them; that they joined hands when the minister requested them to do so; that the minister employed the marriage service used by the Congregationalists; that the minister asked Lyman if he took her to be his lawful wife, to love, protect and cherish her, and care for her in health and sickness; that Lyman responded in the affirmative; that the minister put like questions to the woman, and she made like responses; that when the minister came to the close of the ceremony he pronounced them man and wife; that thereafter Lyman lived with said woman as his wife in Kewanee many years and they raised a family of children, and that she still lives there in the same house where they formerly lived together. We think this was sufficient proof of a marriage contract *per verba de præsenti* between those parties, (*Hiler* v. *People*, 156 Ill. 511,) and that it was not necessary to prove that the clergyman had been ordained, or that the laws of Vermont authorize a clergyman to solemnize marriage. There was other proof having some bearing on the question. Several witnesses testified that they knew Lyman's wife. She was repeatedly spoken of in the testimony as Mrs. Elias Lyman and Mrs. Lyman. Defendant's counsel asked a witness if she had not frequently talked over the marriage ceremony with Mrs. Lyman. Several witnesses had heard defendant speak of and to her as his wife. Adelaide Lyman was sworn as a witness for the prosecution. Defendant's counsel

objected, and said to the court, 'The objection is that she is the defendant's wife.' The objection was afterwards withdrawn. Several of these matters do not appear in the abstract. We think the proof in this respect sufficient.

"It is argued the proof does not establish that Lyman and Alice lived in an open state of adultery together. At this time Lyman had left the home in Kewanee where he and his wife had lived together, and where she still lived, and was now living on one of his farms. Alice lived with him a total of four weeks or longer, going away once and returning. She went up-stairs to bed at night with Lyman. The only places where she could sleep were two bed-rooms. One had only a cot in it and was occupied by a colored woman alone. The other was Lyman's bed-room. Lyman and Alice were seen going into it together at bed time, and were frequently heard talking in it after retiring for the night. At one time they were seen in bed together in their night clothing. At another time they were seen by another witness in the act of sexual intercourse in the same bed. Articles of woman's clothing were seen in his room, which she afterwards wore. He was seen to embrace her upon the porch of his farm house. He drove into town nearly every day, and always took her with him. They attended the county fair together. He bought clothing and a diamond ring for her and had them charged to him, and put the ring upon her finger. When she had a dress skirt fitted, she went into the parlor of the dress-maker's establishment and showed it to Lyman, to see if it pleased him. He said it did, and that she had nice hips. He had the skirt charged to him. He introduced her as Mrs. Lyman and as his wife to several people. The only proof introduced for defendant was to the effect that he was insane, and that his insanity took the direction of lewdness and sexual extravagance. After this had all been heard and evidence in rebuttal on that subject, defendant withdrew the evidence offered as to his insanity. The

proof for the prosecution was made up of many details testified to by numerous witnesses. None of this testimony was contradicted by any witness. The conclusion from all the facts is irresistible that Lyman and Alice lived together openly as husband and wife live together, occupied the same room and bed at night, rode about the country together, and generally followed the course of conduct toward each other which husband and wife are accustomed to, for about four weeks. No one was deceived into thinking they were husband and wife, for those whom they met knew Lyman had a wife, the mother of his children, living in Kewanee. But it was not necessary to the crime that the public should believe they were husband and wife. In our judgment the evidence required the jury to find that they lived together in an open state of adultery.

"Complaint is made that the instructions given at the request of the prosecution did not define the word 'adultery.' This is answered by what is said in *Crane* v. *People*, *supra*. Some of defendant's refused instructions wholly misstated the law. Others were not based upon any evidence, such as those which referred to 'occasional visits' between Lyman and Alice. There was no proof of occasional visits. If any of the refused instructions might have been given, still their refusal did the defendant no harm. The fact of his guilt was clearly proven, and the only defense he attempted he afterwards withdrew. No fact testified to by any witness for the people was controverted by any other witness. The jury could not have returned any other verdict. The judgment is affirmed."

We concur in the foregoing views expressed by the Appellate Court, and in the conclusion above announced by that court. Accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court of Henry county, is affirmed.        *Judgment affirmed.*