DES MOINES CITY RAILWAY COMPANY, Appellee, v. CITY OF DES MOINES, Appellant, ET AL.

**Street railways:** PAVING: STATUTES: ORDINANCES: CONSTRUCTION. In the construction of a statute all of its parts should be given effect if this can be consistently done; and in arriving at its in-

terpretation the history of legislaiton on the subject should be . regarded.

Code, section 834, providing that street railway companies shall at their own expense pave between the rails of the track and one foot outside thereof, unless by ordinance or by virtue of the provisions of any ordinance under which the railway might have been constructed or maintained it may be required to pave other portions of the street, means that the company may be required to pave not less but more than the statute requires; and a city is not bound by an ordinance on the subject existing at the time of the enactment of said section, which is a valid exercise of legislative power, but may enact a new ordinance by virtue of that section fixing the portion of the street which the railway company may be required to pave, and if in force at the time of paving it will govern the railway company's duty.

Evans and McClain, JJ., dissenting.

*Appeal from Polk District Court.*—Hon. W. H. McHenry, Judge.

Saturday, May 6, 1911.

Appeal by the city of Des Moines from an order of the district court reducing certain paving assessments imposed by its city council against the Des Moines City Railway Company. The controversy presented for our consideration includes thirty-three appeals. The decisive question is the same in all, and they are submitted here by stipulation upon the same record. The city council imposed upon the railway company certain paving assessments. The amount in each case was fixed upon the theory that the railway company was liable for the cost of the paving for a width of seven feet, viz., three and one-half feet on each side of the center line between its rails. The railroad company concedes its liability for such paving for a width of five feet, which is the space between its rails. The trial court sustained the contention of the railway company and ordered a reduction of the assessments accordingly. From this order the defendant city has appealed.—*Reversed.*

*Robert O. Brennan* and *James M. Parsons,* for appellant.

*Guernsey, Parker & Miller,* for appellee.

DEEMER, J.—The solution of the question presented depends upon the construction which shall be placd upon section 834 of the Code, which, so far as material, reads as follows:

All railway and street railway companies shall be required to make, reconstruct and repair all paving, graveling or macadamizing between the rails of their tracks, and one foot outside thereof, at their own expense, unless by ordinance of the city, or by virtue of the provisions or conditions of any ordinance of the city under which said railway or street railway may have been constructed or may have been maintained, it may be bound to pave, macadamize or gravel other portions of said street, and in that case said railway or street railway shall make, reconstruct and repair the paving, graveling or macadamizing of that part of the street specified by such ordinance; and such improvement, or the reconstruction or repair thereof, shall be of the material and character ordered by said city, and shall be done at the same time the remainder of said improvement is made, reconstructed or repaired. . . . They shall keep the paving, graveling or macadamizing between said rails, and one foot outside thereof, or such other part as they are liable to construct or maintain, up to grade and in good repair, using for such purpose the same material as used for the original paving, graveling or macadamizing, or such other material as the council may order. . . .

This statute as it now reads was framed by the Code Commission as a codification of the law theretofore existing as found in McClain's Annotated Code of Iowa, 1888, sections 725 and 829, and the Acts of the Twenty-Third General Assembly, chapter 9, section 1, and of the Twenty-Fifth General Assembly, chapter 7, section 10. On the general subject of street improvements, etc., and of the laws

then existing with reference thereto, the Code Commission said:

The present law as to construction of street improvement and sewers is in the greatest confusion. The attempt is made in this chapter to reduce the whole legislation on the subject to a system, preserving the beneficial features of all the statutes (including in instances provisions found in statutes which relate at present only to cities under special charter) and to make the procedure as to the street improvements and sewers harmonize as far as practicable. The powers are made uniform in all cities of five thousand. . . . McClain's Code, sections 847, 853, are omitted as covered by these general provisions.

In the general report of that Commission we find the following expression as to its purposes, aims, and accomplishments:

In the exercise of the duty of rewriting the law and improving its phraseology, the commission has made many verbal changes, but has done so with great care in order that the meaning of the statutes should not be thereby materially changed. The language of the act as above quoted indicates, however, that some alterations in the law for the purpose of securing completeness, and to improve, systemize, and harmonize it and make it clear and intelligible, were contemplated as within the scope of the duties of the Commission, and it has therefore recommended some changes, having in view, however, the unification and perfection of the system of the written law as it now is, rather than the enlargement of it or its change in material matters. . . . Wherever the Code as reported does not exactly follow the present statutory language the new words are underscored, or if a whole section has been rewritten it is all underscored. The underscoring therefore does not necessarily indicate any new law, but if provisions are new, they are necessarily underscored. . . . It must be distinctly understood that a change of language does not necessarily indicate any intention to change the meaning of the law. The Commission is authorized to rewrite the sections of the Code and statutes for the purpose of improving the expression of the law, and it has faithfully done so, omitting

much that is superfluous and improving the statement and arrangement of the written law where practicable. In some chapters the transposition of words, sentences and sections has been so general that substantially entire chapters are underscored without being in any sense new, for instance in the chapters relating to cities and towns, state institutions, and the public schools.

With this in mind, then, it becomes important to go to the law as it existed at the time the act under consideration was framed. The Twentieth General Assembly passed an act known as chapter 20, containing a section reading in part as follows:

All railway companies and street railway companies in cities of the first class as provided in section one of this act, shall be required to pave, or repave between rails and one foot outside of their rails, at their own expense and cost. Whenever any street, highway, avenue or alley shall be ordered paved or repaved by the council of any such city, such paving or repaving between and outside the rails shall be done at the same time and shall be of the same material and character as the paving or repaving of the street, highway, avenue or alley upon which said railway track is located, or of such other material as said council may order, and when said paving or repaving is done said companies shall lay in the best approved manner the strap or flat rail, such railway companies shall keep that portion of the streets, highways, avenues or alleys between and one foot outside of their rails, up to grade and in good repair, using for such purpose the same material with which the street, highway, avenue or alley is paved upon which the track is laid, or such other material as said council may order.
.  .  .

It may be that this act did not have reference to the city of Des Moines; but it is part of the legislative history of the state, and from that standpoint should be considered.

The Twenty-Second General Assembly passed an act which, among other things, contained the following provision:

Cities of the first class . . . shall have the further ·and additional powers conferred by this act, . . . to wit, they shall have power to compel street railway companies, whenever any street is ordered paved, to pave and maintain in width three and one-half feet each way commencing at the center of the space between the rails, and in case of failure to do so to provide by ordinance for such paving and maintenance, and for the manner of assessing against such companies the cost thereof . . . Acts Twenty-Second General Assembly, chapter 16.

By the acts of the Twenty-Fifth General Assembly, chapter 7, it was provided, in section 10 thereof, that:

Whenever any railroad or street railroad may have been constructed, and shall remain upon any street which the council may direct to be paved, at the time when such direction shall be given, and when the owner of such railroad or street railway may be bound to pave any portion of said street by law or ordinance of the city, or by virtue of the provisions or conditions of any ordinance of the city, under which said railway or street railway may have been constructed or may be maintained, and if the owner shall fail or refuse to comply with the order of the council to do such paving, then the portion of the cost of paving such street assessable upon such railroad or street railway shall be ascertained, and shall be assessed against such street railway.

·Such was the condition of the written law of ·the state when the Code Commission came to rewrite the same. These acts passed the scrutiny of the courts, and it was held that they were constitutional and might be made to apply to street railway companies whose franchises were granted before the law took effect. See *Sioux City R. R. Co. v. Sioux City*, 78 Iowa, 367, and same case, 78 Iowa, 742. ·

Again in *Marshalltown Light, P. & R. Co. v. Marshalltown*, 127 Iowa, 637, which was decided long after section 834 of the Code was adopted, it was held that the provisions of a franchise ordinance exempting a street railway company or its assigns from any duty to pave, macadamize,

or improve a street was not such a contract as could not be affected by subsequent legislation imposing a duty upon such company to pave between and outside the rails of its tracks. That decision quotes section 834 of the Code and holds that the city may require paving as provided in said section under a resolution passed after section 834 went into effect. It does not appear in that case when, if ever, an ordinance was passed requiring the street railway to bear its share of the expense of paving. It does appear, however, that the paving was authorized and provided for in the year 1902, which was long after the adoption of section 834 as it now appears in the Code. The franchise ordinance in that case expressly provided that the street railway company should not in any case be required to pave or macadamize any part of the street over which its railway had been constructed.

The result of the whole matter, then, is that, unless section 834 as it now appears changed the law theretofore existing, the trial court was in error in holding that the street railway company was not required to pave more than five feet in width of the street. Going now directly to this section, it will be observed that the primary duty of the street railway company is to pave between the rails of its track and one foot outside thereof. This it must do, unless, by ordinance of the city or in virtue of the provisions or conditions of the ordinance under which the street railway was constructed or is being maintained, it may be bound to pave other portions of said street. In that event the railway company shall pave that part of the street specified by such ordinance. They are also required to keep the paving between the rails and one foot outside thereof or such other parts as they are liable to construct or maintain in good repair, etc.

It is a cardinal rule for the construction of statutes that all parts thereof shall be given force and effect if this can consistently be done.

Legislative history should always be regarded in arriving at a proper interpretation of any given statute. It is clear that down to the time of the adoption of section 834 it was competent for the city council to require the street railway company to make all paving between the rails of their track and one foot outside thereof at the time when the pavement was ordered notwithstanding the provisions of the franchise ordinance. So that, had the law as it then existed not been changed, there would be no doubt of the validity of the order which is challenged in this case. At the time when the order in this particular case was made, there was, as we understand it, an ordinance requiring the street railway company to pave that part of the street then occupied by it not exceeding three and one-half feet on each side of the center line between the rails. This ordinance, it is true, was passed after the Code of 1897 went into effect, and it is contended that such ordinance is invalid because unauthorized by section 834 of the Code. Indeed, the broad contention is made that, as the original franchise ordinance enacted in 1866 required the railway to pave the space between its rails, this established its duty, and under the terms of the statute now under consideration relieved it from paving more than the amount required by the franchise ordinance, although the city thereafter passed an ordinance valid under the statutes then in existence, requiring the street railway company to pave a greater portion of the street. We can not believe that this is a proper construction of the statute. Certainly it was not the law prior to the adoption thereof. To arrive at such a conclusion it is necessary to read out of the statute the words "unless by ordinance of the city," for, if the franchise ordinance specifies what portion of the street the street railway must pave, that ends the matter, under the construction which counsel for the railway company would have us put upon the law, no matter if it appears that thereafter in virtue of a valid law there was another ordi-

nance requiring the railway company to pave more than it was required to do under the franchise ordinance. It seems to us that, to arrive at a proper reading of this statute, we should take into account the law as it then existed and so construe it as to give effect to all its terms. This may easily be done by reference to the ordinance in existence when the paving is ordered. If there be such an one which differs from the franchise ordinance, it of necessity supersedes the original franchise ordinance, and is the one under which the street railway is then being maintained. If there was no other ordinance than the franchise ordinance, and this franchise ordinance fixed the amount to be paved, that would be controlling. Remembering that the council had power by ordinance to change the original franchise ordinance in this respect, it follows that the franchise ordinance is to that extent superseded and is not the one under which the street railway is being maintained. It may be said that this reads something into the statute which does not there appear; but we think not. The effect of it is to say that we look to the ordinance of the city in force when the paving is ordered, or, if there be none, to the provisions of the ordinance under which the railway may have been constructed or is then being maintained. The obligation to pave must be found in one or the other, and that obligation is the one in existence when the pavement is ordered. If the franchise ordinance be superseded by another, then the railway company is being maintained under that ordinance and not under its original grant.

Claim is made that, to determine what ordinance is to govern, we must look to the conditions as they existed when section 834 of the Code was adopted; that is to say, that the date of the adoption of this section fixed the conditions, and that thereafter no ordinance could be passed with reference to the subject of the width of a street that a street railway may be required to maintain. If this be the

law, it is because of the incorporation of section 834 into the Code of 1897. We do not think that it was the intent of the Legislature to tie the hands of city councils by the adoption of this statute. And our conclusion is bottomed primarily upon the notion that we should look to the conditions existing when the improvement is ordered, and not the ordinance in force when this act went into effect. It is entirely too narrow a construction to say that the law has reference to an ordinance in existence when section 834 was passed. This would tie the hands of the council and limit its power to act in the future with reference to the subject matter. Surely this was not intended. It was not the law before the adoption of section 834, and there is nothing in the terms of the act which indicates that it had reference only to ordinances in existence when the section was passed. It does not say ordinance then in existence; and it manifestly has reference to ordinances at any time legally passed with reference to the subject. Moreover, the writer of this opinion is inclined to believe that it may properly be interpreted to mean that the street railway company must pave between the rails of their tracks and one foot outside thereof, unless there be something in the ordinance of the city, or, if there be none, in the franchise ordinance requiring them to pave more.

The words used in this connection are "unless it may be bound to pave other portions of said street." The words "other portions of said street," it seems to me, should be construed to mean, not something less which would be included in what was greater, but something more than the statute requires. This may perhaps be a little forced, but it is confirmed somewhat by the provision as to how much the railway company is required to keep in repair. It says "the part between the rails and one foot outside thereof or such other part (which means to my mind some different part) as they are liable to construct or maintain." My opinion in this respect is not concurred in by all the

other members of the court; but I think it is entitled to consideration. Certainly this is true as applied to the franchise ordinance.

Looking to the legislative history of this act, to the report of the Code Commission, to the language used, and remembering the fundamental canon of construction that all parts of it should be permitted to stand and be given effect, we are of opinion that the ordinance, passed by the city after the adoption of section 834 of the Code, requiring the company to be at the expense of the paving between the rails and one foot outside thereof, was a valid exercise of power, and that the city is not bound by conditions as they existed when section 834 went into effect, nor is it bound by the terms of the original franchise ordinance. Prior to the adoption of section 834, the city had the right to change the terms of the franchise ordinance with reference to the subject of paving, and we do not think that section 834 deprived it of the power to make changes thereafter. If such was the intent, it was most carefully concealed, and we feel sure in affirming that the Code Commission had no intent to change the law in the manner suggested by counsel for the street railway company. Certainly there was no thought on the part of any one that by the adoption of section 834 the duty of the street railway to pave was fixed by the terms of its original franchise ordinance, if perchance it should be found that in that ordinance the subject of paving was covered.

We do not believe that it was the intent to fix conditions with reference to any arbitrary date. The thought was to require the paving between the rails and one foot outside thereof unless the city having plenary power over the matter should require some other width, and as the writer believes some greater or other width.

From this it follows that the decree rendered by the trial court is wrong, and that it should be *reversed*.

EVANS, J. (dissenting).—I am not able to concur in the majority opinion. The case turns upon the construction to be put upon the exceptions contained in section 834 of the Code. So far as material for our consideration, such section is as follows:

All . . . street railway companies shall be required to make . . . all· the paving . . . between the rails of their tracks, and one foot outside thereof, at their own expense, (1) *unless by ordinance of the city* or (2) by virtue of the provisions or conditions *of any ordinance of the city under which said . . . street railway may have been constructed* or may be maintained, it may be bound to pave . . . *other portions of said street,* and *in that case said* . . . street railway shall make . . . the paving . . . *of that part of the said street specified by. such ordinance.*

For convenience of reference I have interpolated the numbers 1 and 2. The italics also are mine. The clauses Nos. 1 and 2 are the two exceptions contained in the statute which we are required to construe. Stating each exception separately, it would read in its completeness as follows:

(1) Unless by ordinance of the city it may be bound to pave other portions of said street, and in that case said . . . street railway shall make . . . the paving . . . of that part of the said street specified by such ordinance. (2) Unless by virtue of the provisions or conditions of any ordinance of the city under which said street railway may have been constructed or may be maintained it may be bound to pave other portions of said street, and in that case said street railway shall make . . . the paving . . . of that part of the said street specified by such ordinance.

In the discussion of the case by the parties, exception No. 2 has been treated as referring to a franchise ordinance and exception No. 1 as referring to a general ordinance not connected with the franchise. This distinction is in

harmony with the majority opinion, and I shall assume its correctness.

Before proceeding to a consideration of the statute and its exceptions, a word of history is necessary.

The original franchise ordinance of Des Moines providing for the construction of street railways was enacted in 1866. This required the railroad company to pave the space between its rails. The extent of such space was three feet on a narrow-gauge track and five feet on a standard-gauge. In 1888 chapter 16 of the Acts of the Twenty-Second General Assembly was enacted. This chapter conferred power upon cities to require street railway companies to pave not exceeding three and one-half feet on each side of the center line between the rails. This legislation appeared later as section 725 of McClain's Code. Prior to this enactment *there was no power in the city to require the city railway company to pave to any extent except by franchise ordinance.* Such was the holding in *Land Co. v. Oskaloosa,* 99 Iowa, 496. (It should be noticed here that chapter 20 of the Acts of the Twentieth General Assembly, codified as section 829 of McClain's Code, was so framed as to be applicable to Sioux City alone.)

The power so conferred by the legislation of 1888 was permissive only and not mandatory. It could be exercised or not, or to such an extent as the city council saw fit. *Lacey v. Marshalltown,* 99 Iowa, 367.

The absence of such legislation prior to 1888, however, did not prevent a city from making such requirement as to paving as it saw fit in a franchise ordinance. *Sioux City Street R. R. Co. v. Sioux City,* 78 Iowa, 742; *Sioux City Street R. R. Co. v. Sioux City,* 78 Iowa, 367; *Sioux City Street R. R. Co. v. Sioux City,* 138 U. S. 98 (11 Sup. Ct. 226, 34 L. Ed. 898).

Prior to the legislation of 1888, the Street Railway Company of Des Moines operated wholly under the franchise ordinance of 1866. After the legislation of 1888,

and on July 23, 1889, the city enacted a new ordinance requiring the street railway company to pave in all cases a width of *five* feet regardless of the gauge of the railway on the particular street. This was assented to by the railway company and its provisions complied with. The railway company constructed, maintained, and operated its railway under this ordinance from the time of its enactment up to the time of the enactment of section 834 in the Code of 1897. After the enactment of section 834, the city council of Des Moines enacted an ordinance requiring the railway company to pave the full width of seven feet. Such ordinance was enacted in 1899. It is the attempted enforcement of such ordinance of 1899 which has given rise to this controversy. Several questions naturally arise:

(1)   Does this section 834 confer power on a city council to enact a general ordinance (not a franchise ordinance) fixing the extent of paving to be required of a street railway company?

(2)   Does the word "ordinance," in exception No. 1, refer to a then existing ordinance, or does it apply also to any general ordinance on that subject which might thereafter be enacted by any city council?

(3)   What is meant by "other portions" of said street? Does it necessarily mean *more* than seven feet, or may is mean *less* than seven feet?

(4)   In the nature of the case, can the exceptions 1 and 2 both be applicable at the same time if they differ in their requirements, or does one necessarily supersede the other? If the latter, which one shall be deemed to control?

The conclusion of the majority is, in substance, that section 834 conferred power on the city council to enact future general ordinances prescribing the paving requirements from the street railway company, and that exception No. 1 is applicable to any such ordinance whether enacted prior to this statute or thereafter; that "other portions of said street" is to be construed as *more* than seven feet;

that exception No. 1 is found to exist in the case at bar; and that it supersedes exception No. 2 ,and therefore controls the case. To my mind these conclusions are not justified by the language of the statute.

Section 725, McClain's Code, 1888, was as follows: "All cities of first class . . . shall have power . . . to compel street railway companies, whenever any street is ordered paved, to pave and maintain in width three and one-half feet each way, commencing at the center of the space between the rails. . . ."

As already indicated, it was expressly held in the case of *Land Co. v. Oskaloosa, supra,* that prior to this statute there was no power in a city council to enact an ordinance taxing the cost of paving to a street railway company except in accord with a franchise ordinance. The above section was repealed when section 834 was enacted. If any power of enactment on that subject for the future was conferred upon the city council after the repeal of that section, it must be found, if at all, in section 834, which I have already quoted. Clearly no express terms can be found therein which purport to confer such power. If such section is to be deemed as conferring such power, it must be found from the merest implication. Even such implication can find no place in the main provision of this statute. The implication is based solely upon exception No. 1 and upon the use of the word "ordinance" therein. In order to give rise to such implication, the word "ordinance" is construed or referring not only to a then existing ordinance, but also to any future ordinance. The implication arises, therefore, not as a necessity out of the terms used in the statute, but arises out of an adopted construction which presupposes the very implication sought. To put it in another way: The word "ordinance" as used therein can easily be held to apply to a then existing ordinance. It could also be construed to apply to a future ordinance if power of enacting a future ordinance was conferred. But

clearly it could not be so construed if no such power existed. Concededly no such power was conferred by this statute unless by necessary implication. No such implication could arise unless the word "ordinance" were first arbitrarily construed as referring to a *future* ordinance. The implication of power conferred is not necessary to the harmony of the statute as written. It is necessary only to support the enlarged construction which the majority puts upon the word "ordinance" as used in exception No. 1.

The following quotation adopted in *Land Co. v. Oskaloosa,* 99 Iowa, 502, is quite in point here: "It is the policy of the law to require of municipal corporations strict observance of their powers." 15 Am. & Eng. Enc. Law, 1039, 1041. "The grant of authority, from the Legislature of the state to the council of the city, to levy an assessment for improvement, is as sacred as that which authorizes the imposition of taxes. The authorization should be explicit, and not leave the city council too wide discretion, because of vague language in the legislative grant." 10 Am. & Eng. Enc. Law, 277.

I can not avoid the conclusion that section 834 can not fairly be construed as conferring any power upon the city council to enact future ordinances requiring of a street railway company an area or extent of paving "other" or different than the statutory seven feet. It seems clear to me that the exceptions noted in this section have reference to then existing ordinances, and that "other portions" of said street means "other" than seven feet whether more or less. Section 725, McClain's Code, was not mandatory. The Legislature did not purport therein to prescribe the duties of the railway company in that respect. But it expressly conferred power upon the city council to do so by ordinance subject to a limit of seven feet.

On the other hand, section 834 of the present Code is mandatory. It prescribes the duty of the railway company and fixes the space at seven feet, neither more nor less,

subject only to the two exceptions already noted. What occasion is there for an ordinance to require a railroad com- pany to pave to the extent of seven feet in a case where the statute itself requires it regardless of such ordinance? What occasion is there for a statute to fix the extent of pav- ing at seven feet if future ordinances may be enacted re- quiring more than seven feet? It is the view of the ma- jority that "other portions" means *more* than seven feet. The result of this construction is to say that, notwithstand- ing that the main provision of the statute expressly pre- scribes seven feet as the amount of paving required of a railway company, yet the city council may by future ordi- nance require *more*. How much more? If it has this power at all, there is no limitation upon it. This is a greater power of ordinance than it ever had before. Sec- tion 725, *supra,* expressly set a limit upon its power. Un- der that section it could not require more than seven feet. It follows then that a radical change has been wrought by the repeal of section 725, *supra,* and the enactment of sec- tion 834. And yet it is argued at one point in the ma- jority opinion that section 834 was a mere codification of existing law and changed nothing. This is the argument in support of the contention that section 834 was intended by the Legislature to confer upon the city council the same power of ordinance that it had under the preceding sec- tion 725. This is perhaps sufficient discussion at this point to show that the construction adopted by the major- ity does not bear analysis. It seems to me that this stat- ute can be safely construed according to its very terms. The repeal of section 725, *supra,* took away from the city council its power of enacting future ordinances on this sub- ject. Instead of continuing the power of the city council to enact further ordinances on the subject, section 834 pre- scribes the exact extent of paving required from railway companies, preserving, however, the *status quo* of all par- ties where existing ordinances had already prescribed the

portion or extent of the street to be paved by the company. The statutory burden thus laid on the railway company was fixed at the former maximum and made mandatory by the statute itself, and it left no occasion for further ordinance on the subject.

Section 834 was a step in advance of section 725 of McClain's Code, in this, that it made mandatory that which was only permissive under section 725. That is to say, section 834 enacted the paving requirement which section 725 permitted the city council to enact. The public interest, therefore, was protected by the enacted provision, while the power of the city council in that respect was eliminated. What power the city council had *prior* to the enactment of section 725 in 1888, such power it has now; no more, no less.

II. Turning now to another phase of the discussion, and applying the statute to the particular facts of this case, it is the theory of the majority that the ordinance of 1899, enacted after section 834 went into effect, constituted exception No. 1 within the meaning of such section. . The ordinance in existence prior to the enactment of section 834 required the railway company to pave a width of five feet; whereas, the ordinance of 1899 purported to require paving for the width of seven feet. It is also the theory of the majority that this ordinance as exception No. 1 supersedes exception No. 2 and controls the case. I will assume for this part of the discussion that one of these exceptions must supersede the other. I will also assume that if exception No. 1 is shown to exist, it will supersede exception No. 2, although there is much to be said against this assumption and in favor of the assumption that a franchise ordinance which would constitute exception No. 2 should supersede a general ordinance enacted thereafter. But I do not care to deal with that question now. What I desire to point out here is that the ordinance of 1899 does not come within the terms of exception No. 1 and does not,

therefore, constitute such exception. The ordinance which is described in the statute as constituting exception No. 1 is an ordinance whereby the railway company "may be bound to pave *other portions* of said street." *The ordinance of 1899 does not require the railway company to pave "other portions" of said street.* And this is so whichever construction be applied to the word "other." If "other portions of said street" mean *more* than seven, as held by the majority, yet this ordinance of 1899 does not require more than seven feet. If this clause means *more or less* than seven feet, it is outside of the ordinance of 1899 on either hypothesis. This ordinance of 1899 calls for *seven feet* of paving and simply re-enacts the main provision of the statute itself. Such an ordinance is not an exception to the statute in any sense. If I am right in this respect, then exception No. 1 is not shown to exist in this case at all. The case must therefore be controlled not by the ordinance of 1899, but by the main provision of section 834, unless exception No. 2 is *found to exist.*

The argument of the majority has treated exception No. 2 as superseded by the assumed existence of exception No. 1. It does not deny the applicability of the existence of exception No. 2 in the absence of exception No. 1. Neither can it be denied that the facts constituting exception No. 2 are found in this case. The ordinances of 1866 and of 1889 of the city of Des Moines were the ordinances under which the street railway was constructed upon the streets in question. Under such ordinances the railway company was required to pave a space extending two and one-half feet from the center line of its track. It is not claimed that the street railway was constructed over any of the streets in question subsequent to the enactment of seciton 834. These ordinances, therefore, come within the terms of exception No. 2, in that thereby the company was bound to pave "other portions" of the street in the sense that five feet was "other" or different than seven feet.

If five feet is not to be deemed "other" than seven feet, then, of course, my argument fails in this respect. To hold otherwise, however, and to hold that "other" can only mean "more," is to hold, as I have already shown, that there is no limit left upon the power of the city council to make such paving requirement of the street railway company as it shall see fit.

This is perhaps a sufficient discussion to indicate the grounds of my dissent. I think the trial court reaches a correct conclusion and that its decree ought to be affirmed.

McClain, J., concurs in the dissent.