LEVER BROTHERS COMPANY, a corporation, et al., appellants, v. NORMAN A. ERBE, Attorney General of Iowa, et al., appellees.

No. 49237.

(Reported in 87 N.W.2d 469)

456

January 14, 1958.

Brody, Parker, Miller, Roberts & Thoma, of Des Moines, for appellants.

Norman A. Erbe, Attorney General, Don C. Swanson and Freeman H. Forrest, Assistant Attorneys General, for appellees.

GARFIELD, J.—The vital question we find it necessary to decide is whether Iowa law prohibits the sale of oleomargarine (herein also called margarine) containing about two per cent butterfat. We must disagree with the trial court's holding there is such prohibition.

Plaintiff Lever Brothers Company manufactures Imperial margarine. Plaintiff Mrs. Clark's Foods, Inc., an Iowa corporation, distributes it to about 1100 retailers in Iowa. November 20, 1956, the state department of agriculture wrote Lever Brothers that Imperial margarine contained butter oil; under section 190.1, subsection 2, Code, 1954, margarine is defined as (quoting this statute, hereinafter set out); it is therefore evident Imperial violates our laws and "we request that immediately * * * you notify all distributors in Iowa the product does not meet the requirements of our law and its sale after December 1 will place wholesalers and retailers in a very vulnerable position." January 31, 1957, an assistant state attorney general gave the department of agriculture an opinion that the definition in "section 190.1(2). requires that margarines not contain milk fats."

This action was commenced February 1. The petition alleges, the answer admits, and it was stipulated upon the trial that the determination of the department of agriculture, above referred to, would prohibit the sale of Imperial margarine in

Iowa for the sole reason its contents include butter. It was also stipulated the department of agriculture interprets section 190.1(2) as prohibiting sale of margarine made with butter, cream or milk but as permitting sale of margarine made with skim, or dry skim, milk.

We accept the statement at the outset of defendants' brief that the action involves interpretation of section 190.1(2) and other related statutes dealing with adulteration, and the issue is whether Imperial margarine in its present form complies with the definition and standard for margarine set out in 190.1(2). The significant fact as to Imperial's contents is that they include, according to defendants' chemist, in the neighborhood of two per cent butterfat as previously indicated.

We quote pertinent parts of the statutes set out in the assistant attorney general's opinion above referred to:

"190.1 Definitions and standards. For the purpose of this chapter the following definitions and standards of food are established: * * *

"2. *Oleomargarine.* Oleo, oleomargarine or margarine includes all substances, mixtures and compounds known as oleo, oleomargarine or margarine, or all substances, mixtures and compounds which have a consistence similar to that of butter and which contain any edible oils or fats other than milk fat if made in imitation or semblance of butter.

"190.3 Food adulterations. For the purposes of this chapter any food shall be deemed to be adulterated: * * *

"10. If it does not conform to the standards established by law or by the department [of agriculture].

"191.6 Standards for oleomargarine. The department * * * may prescribe and establish standards for * * * oleomargarine * * * and may adopt the standards set up by now existing regulations of the federal security administration * * * as found in 1949, Code of Federal Regulations, Title 21, Part 45, section 45.0, or any amendments thereto. Any standards so established shall not be contrary to or inconsistent with * * * 190.1, subsection 2 * * *.

"189.2 Duties. The department * * * shall: 1. Execute

and enforce the provisions of this title, except [statutes not here material] * * *.

"189.15 Adulterated articles. No person shall knowingly manufacture, * * * or offer * * * for sale, any article which is adulterated according to * * * this title.

"190.5 Adulteration with fats and oils. No milk, cream, skimmed milk, buttermilk, condensed or evaporated milk, powdered or desiccated milk, condensed skimmed milk, ice cream, or any fluid derivatives of any of them shall be made from or have added thereto any fat or oil other than milk fat, and no product so made or prepared shall be sold, * * *."

Section 189.19 makes a violation of any of the above provisions punishable by a fine of not more than $100 or imprisonment in the county jail not to exceed thirty days and upon a third conviction for the same offense the offender may be restrained from operating his place of business.

 We agree with the attorney general that clearly 190.1(2) establishes the standard and definition of margarine. It was stipulated the department of agriculture has prescribed no standards for oleomargarine pursuant to the authority given in 191.6 quoted above. And none may be adopted contrary to or inconsistent with 190.1(2). We cannot agree with defendants, however, that a proper interpretation of 190.1(2), either alone or in connection with any other statutes called to our attention, prohibits sale of margarine containing about two per cent butterfat.

There are two parts, separated by the disjunctive "or", to the statutory definition of margarine. We first consider application of the second of these parts. Imperial, like all yellow colored margarines, is a substance which has a consistence similar to butter and is made in imitation or semblance of it. It also contains edible oils or fats in addition to a small quantity of milk fat. Since butter need contain only at least 80% milk fat (190.1, subsection 1), Imperial, with about 2% butterfat, may contain as little as 1.6% milk fat. The attorney general's opinion which precipitated this action and his argument here are to the effect the words "other than" as used in 190.1(2) cannot mean anything besides "except" or "to the exclusion of." And

it is by ascribing this meaning to "other than" that 190.1(2) is interpreted as prohibiting sale of margarine containing as little as about 2% milk fat.

We think this claims too much for "other than." While they are sometimes used to mean "except" they also frequently mean "in addition to", "different from" or words of similar import, and there are persuasive indications they are used in this latter sense here. At best it is not at all clear that 190.1(2) prohibits the use in margarine of a small quantity of milk fat. Defendants' brief agrees the words "other than" are susceptible of other interpretations than that claimed by them in this connection.

Chapter 190 contains other references to "other than" which may not fairly be construed as words of prohibition or exclusion. Section 190.1(5) defines imitation cheese as "a product containing any substance other than that produced from milk or cream * * *." This definition immediately follows that of cheese which is made with milk or cream. It is significant too that the statutory definition of margarine immediately follows that of butter in which the only fat mentioned is milk fat. In defining ice milk 190.1(36a) states, "It shall not contain fats other than milk fat" and it shall not be sold in any "manner other than as provided herein * * *."

Plaintiffs cite these opinions in which "other than" are used in the sense for which they contend: Lames v. Armstrong, 162 Iowa 327, 330, 144 N.W. 1, 49 L. R. A., N. S., 691, Ann. Cas. 1916B 511; Des Moines City Ry. Co. v. Des Moines, 152 Iowa 18, 26, 131 N.W. 43; Burlington Gaslight Co. v. Burlington, C.R.&N.R.Co., 91 Iowa 470, 472, 59 N.W. 292. Doubtless there are a great many others. See e.g. State v. Olson, 249 Iowa 536, 562, 86 N.W.2d 214, 230; State v. Harless, 249 Iowa 530, 532, 86 N.W.2d 210, 211; Roshek Realty Co. v. Roshek Bros. Co., 249 Iowa 349, 359, 87 N.W.2d 8, 14.

Defendants cite Ingram v. State, 241 Ala. 166, 168, 3 So.2d 431, 432, as supporting their interpretation of 190.1(2). There a deputy sheriff was indicted for taking a fee " 'other than allowed by law for said services' " etc. Although the indictment was held defective upon other grounds it was said a reasonable

construction of the quoted language is that defendant took a fee not allowed by law *in view of the added charge an unlawful fee was taken*—if, as defendant evidently argued, the fee may have been less than that allowed by law it would not be an unlawful taking.

Lyman v. People, 198 Ill. 544, 547, 64 N.E. 974, 975, cited in the Ingram opinion, is similar to it on principle. There the meaning of "other than" as "additional" was clearly negatived by other language in the indictment. Neither precedent is applicable here.

The definition of margarine in 190.1(2) is obviously copied from that enacted by Congress in 1950 (15 U.S.C., section 55(f)). The only differences are that our statute uses "oleo" as well as "oleomargarine or margarine" and divides the two parts of the definition by "or" rather than by the numbers (1) and (2) with a semicolon between the two parts. When the federal act was passed the definition and standard of margarine which had been adopted by the Food and Drug Administration, charged with administering the Food, Drug and Cosmetic Act (21 U.S.C., section 301 et seq.), permitted the use of milk, cream or butter as an ingredient. The 1950 Act was not intended to nullify this definition and standard. And the federal regulation and standard now in effect expressly permits milk, cream or butter as an ingredient of margarine.

Section 191.6, previously quoted, authorizes our department of agriculture to "adopt the standards set up by now existing regulations of the federal security administration * * *." It was stipulated upon the trial in effect that the federal standards 191.6 specifically refers to expressly permit the use of milk, cream or butter in margarine. Section 191.6 was passed by the Fifty-fifth General Assembly which enacted 190.1(2) and both are parts of the same act (chapter 97, sections 8 and 1).

It is scarcely conceivable that if, as defendants contend, the legislature intended 190.1(2) to prohibit the use of milk fat in margarine it would authorize by 191.6 the adoption of a standard which expressly permits such use. It is no answer that our department of agriculture has not adopted the federal standard.

The significant fact is that the legislature granted authority to do so.

■ Even in the absence of such a provision as 191.6, the construction the federal administrative agency placed upon the definition of margarine in the federal oleomargarine act, from which our definition was taken, would be entitled to great weight. The presumption would be that our legislature was cognizant of the federal regulations interpreting the act and intended our definition should have a similar meaning. See Woods Bros. Constr. Co. v. Iowa Unemployment Comp. Comm., 229 Iowa 1171, 1176-79, 296 N.W. 345, 348, 349, and citations; Equitable Life Ins. Co. v. Iowa Employment Security Comm., 231 Iowa 889, 2 N.W.2d 262, 139 A. L. R. 885, and annotation 892; Magner v. Kinney, 141 Neb. 122, 2 N.W.2d 689, 692, 693; 82 C. J. S., Statutes, section 371.

In the enactment of what is now section 191.6, above quoted, the Fifty-fifth General Assembly struck therefrom this language following "section 45.0" near the end of the first sentence: "except that there shall not be used in the manufacture of oleomargarine or margarine any cream, milk, skim milk, or milk fat, or any dried milk, or dried skim milk, or buttermilk, or dried buttermilk." (Senate Journal, 55th G.A., page 255.) Defendants interpret the present law to mean what the stricken language means insofar as it relates to cream and milk.

Striking the provision just quoted is an indication the law should not be construed to include, in effect, such provision. There is no fair basis for an assumption the language was stricken because it was deemed surplusage. We are unable to find other language in the act (chapter 97, Fifty-fifth General Assembly) which expresses the meaning of that stricken.

■ That the striking of the quoted language is a significant factor in a proper interpretation of the law see Independent Sch. Dist. of Cedar Rapids v. Iowa Employment Sec. Comm., 237 Iowa 1301, 1308, 1309, 25 N.W.2d 491, 496, and citations (" 'Rules against reading anything into a statute by implication are particularly applicable to provisions expressly rejected by the legislature.' ") ; Carey v. Donohue (Hughes, J.), 240 U. S. 430, 436, 437, 36 S. Ct. 386, 60 L.Ed. 726, 729, L. R. A. 1917A 295; People's Gas Light & Coke Co. v. Ames, 359 Ill. 152, 194 N.E. 260,

263; American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A. L. R. 798, 803; State v. Chicago & N.W.Ry. Co., 147 Neb. 970, 25 N.W.2d 824, 828; State ex rel. Winnett v. Omaha & C.B.St.R.Co., 96 Neb. 725, 148 N.W. 946, 947, 948; Annotation, 70 A. L. R. 5, 22–24; 50 Am. Jur., Statutes, section 330; 82 C. J. S., Statutes, section 355, pages 752, 753.

▮▮▮▮ Defendants' concession in oral argument we may resort to legislative journals to determine legislative history of a statute of doubtful meaning renders unnecessary citations to that effect. See, however, 82 C. J. S., Statutes, section 355, page 750; 50 Am. Jur., Statutes, section 328; also citations last above.

The definition of margarine in 190.1(2), heretofore quoted, was enacted in lieu of this definition of imitation butter in section 190.1(2), Code, *1950:* "Imitation butter is any product containing any fat other than that derived from milk or cream, as provided in subsection 1 above, and made in the appearance of butter or designed to be used for any of the purposes for which butter is used." The only fat referred to in subsection 1 which defines butter is the fat of milk or cream. It seems clear any other fat may not be used in butter.

▮▮▮▮ The definition of imitation butter did not say its fat content must be *wholly* or *entirely* fat other than that derived from milk or cream. Nor is there any clear indication the present definition of margarine in 190.1(2) means its fat content must be *wholly* or *entirely* fat other than milk fat. The effect of defendants' argument is that we are asked to read such a provision into the statute. We have no power to do so. The argument should be addressed to the legislature. Independent Sch. Dist. v. Iowa Emp. Sec. Comm., supra, 237 Iowa 1301, 1306, 25 N.W.2d 491, 495, and citations; Young v. O'Keefe, 246 Iowa 1182, 1187–89, 69 N.W.2d 534, 537, 538; Id., 248 Iowa 751, 757, 82 N.W.2d 111, 115; Stuart v. Pilgrim, 247 Iowa 709, 715, 74 N.W.2d 212, 216 ("The statute does not so say, and we are bound by its terms * * *.").

▮▮▮▮ Although the Fifty-fifth General Assembly replaced the definition of imitation butter with that of margarine it did not change section 192.31 which states, "Imitation butter shall be sold only under the name of oleomargarine, * * *." Chapter 97, Acts of Fifty-fifth General Assembly, contained not only what

**464**

are now sections 190.1(2) and 191.6, Code, 1954, but also provided detailed regulations governing the packaging, labeling, marking and serving of margarine. Kent Products, Inc. v. Hoegh, 245 Iowa 205, 61 N.W.2d 711, sets out some of these requirements. It would seem from the legislature's retention of 192.31, quoted above, it was interested in giving a rather broad meaning to the term "margarine", rather than a restricted one such as defendants contend for, to the end that all compounds known as margarines would fall within the scope of the statutory regulations regarding packaging, labeling, marking and serving.

As previously stated it was stipulated the department of agriculture interprets 190.1(2) as prohibiting sale of margarine containing butter, cream or milk, but as permitting its sale if made with skim, or dry skim, milk. The statute refers only to "milk fat"—it is either prohibited or not prohibited. There is no indication this term is used in 190.1(2) in any different sense from many other definitions in section 190.1. Milk contains at least 3.25% milk fat, skim (skimmed) milk less than 3% milk fat. Section 190.1 (39, 40).

There seems to be no basis in the statute for the interpretation just referred to nor is it consistent with the attorney general's interpretation of 190.1(2). It can be reached only by reading something into the law which is not there, contrary to the decisions previously cited on this point. Under this interpretation margarine containing a percentage of skimmed milk slightly greater than the percentage of milk in other margarines might well contain more milk fat. Yet it would be permitted while the other margarines with lower content of milk fat would be prohibited.

We consider now the first part of the definition in 190.1(2) : "* * * margarine includes all substances, mixtures and compounds known as oleo, oleomargarine or margarine * * *." It is clear Imperial is such a substance unless it be for one or both of two reasons—(1) its milk fat content and (2) the fact it was not sold anywhere until nearly two years, nor in Iowa until nearly three years, after passage of chapter 97, Acts of Fifty-fifth General Assembly.

We think Imperial is a substance known as margarine although it contains some milk fat. There is undisputed testimony all margarines, so far as known, except perhaps some made to satisfy certain religious sects, contain, according to their labels, some milk. The evidence mentions several well-known brands in particular. It also appears all skim, and dry skim, milk (which our department of agriculture permits in margarine) contain some milk fat. There seems to be no way of removing all fat from milk.

We have already referred to the federal definition of margarine, from which ours is obviously copied, which permitted milk, cream or butter as an ingredient. The federal standard of identity established in 1941 was "that oleomargarine is a plastic food prepared from animal fat or vegetable fat or oil, or a combination of both animal and vegetable fat, which is intimately mixed with milk ingredients." Land O'Lakes Creameries v. McNutt (1943), 8 Cir., 132 F.2d 653, 655. This definition is repeated in substance in 67 C. J. S., page 490 (1950).

State v. Armour Packing Co. (1904), 124 Iowa 323, 328, 100 N.W. 59, 60, 2 Ann. Cas. 448, contains this definition: "* * * oleomargarine is a manufactured product, made of oleo oil, neutral lard, milk and cream, and pure butter, although pure butter is not used in all grades, * * *." Since a contrary intent of the legislature is not made clear by chapter 97, Acts of Fifty-fifth General Assembly, it is presumed to have used the term oleomargarine in the first part of 190.1(2) in the meaning given it by our Armour opinion which substantially accords with other contemporaneous definitions on the matter here in issue. State v. Bevins, 210 Iowa 1031, 1043, 230 N.W. 865, and citations; Coates v. United States, 8 Cir., 181 F.2d 816, 19 A. L. R.2d 840, 843; Gentry v. State, 223 Ind. 459, 61 N.E.2d 641, 642; 50 Am. Jur., Statutes, section 322; 82 C. J. S., Statutes, section 316b, pages 552, 553.

A 1925 Wisconsin statute prohibited manufacture or sale of any product which "may be used as a substitute for butter and which is made by combining with milk or milk fats * * * any fat, oil, or oleaginous substance * * * other than milk fat." In rejecting the attorney general's contention the statute did not prohibit manufacture and sale of margarine unless

milk or milk fats were used therein the court said: "Under the evidence produced in this case this contention is little more than a quibble. There is not a scintilla of evidence that there has ever been upon the market in commercial form a substance known as oleomargarine which did not combine milk or milk fats with some oleaginous substance. * * * We shall therefore * * * regard the statute as one which prohibits the sale and manufacture of oleomargarine *as that term is known and understood both in law and in commerce.*" (Italics added.) John F. Jelke Co. v. Emery, 1927 (Rosenberry, J.), 193 Wis. 311, 316, 214 N.W. 369, 371, 53 A. L. R. 463, 469.

Webster's New International Dictionary, Second Ed. (1934), thus defines margarine: "Any of various artificially prepared edible fats used as substitutes for butter and made by churning suitable fats * * * in milk or cream, salting and working like butter."

■ Of course our legislature was free to adopt a definition of margarine at variance with the above definitions. However, it chose to embody in its definition the provision that it "includes all substances, mixtures and compounds known as * * * margarine * * *." Under both legal and nonlegal authority Imperial is such a substance notwithstanding its small milk fat content.

■ Nor does the fact Imperial was not made or sold until after passage of chapter 97 render the language just quoted inapplicable to the product. The statute does not refer to brand names or trade-marks but to "substances, mixtures and compounds." If, as we have held, Imperial answers the description of a substance known as margarine, even though introduced after passage of the law, it falls within the definition. Bruce Transfer Co. v. Johnston, 227 Iowa 50, 287 N.W. 278, and citations; 50 Am. Jur., Statutes, section 237; 82 C. J. S., Statutes, section 319 (The heavy type reads: "Statutes framed in general terms and not plainly indicating the contrary will be construed prospectively, so as to apply to persons, subjects, and things within their purview and scope coming into existence subsequent to their enactment.").

The Bruce Transfer decision holds a statute in existence in substantially the same form since 1872, applicable by its terms

to "stages, or other line of coaches or cars," includes within its purview motor vehicle trucks operating as common carriers of freight. The opinion quotes this with approval at pages 52, 53 of 227 Iowa, page 279 of 287 N.W., and cites many precedents therefor: " 'It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage. Thus, an automobile may come within the provisions of an act relating to vehicles generally, although the statute was passed before the invention of automobiles.' "

Our view that Imperial comes within the first part of the definition of margarine in 190.1(2) furnishes some support for the position heretofore expressed that the second part of the definition does not prohibit the use in margarine of about 2% butterfat. A contrary conclusion as to the meaning of the second part would result in conflict between the two parts of the same subsection. Surely the legislature intended no such conflict. Inclusion of the first part of 190.1(2) is a further indication the legislature desired to give a rather broad meaning to the term margarine.

It is clear from section 189.19, heretofore quoted, that 190.1(2) is penal in nature. It was stipulated that unless the court otherwise orders, defendants will use every available means, including criminal prosecutions, to stop plaintiffs from selling Imperial in Iowa as it is now manufactured. Penalties include not only fine and imprisonment but restraint from operating a dealer's place of business. It is well settled that penal statutes are strictly construed, and doubts, if any, resolved in favor of the individual. State v. Di Paglia, 247 Iowa 79, 90, 71 N.W.2d 601, 607, 49 A. L. R.2d 1223 and citations.

State v. Coppes, 247 Iowa 1057, 1061, 1062, 78 N.W.2d 10, 13, 14, approves these established rules:

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a

468

statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citation.]

"* * * 'The legislature * * * must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid. * * * It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. Purely statutory offenses cannot be established by implication. * * *.' "

See also State v. Hansen, 244 Iowa 145, 147, 55 N.W. 2d 923, 924, and citations; State v. Campbell, 217 Iowa 848, 853, 251 N.W. 717, 92 A. L. R. 1176, and citations; and, without committing to it the Judges who dissented therefrom, State v. Schultz, 242 Iowa 1328, 1333, 50 N.W.2d 9, 11, and citations; 82 C. J. S., Statutes, section 389b(1), page 924 et seq.; 50 Am. Jur., Statutes, section 409, page 434 ("Acts in and of themselves innocent and lawful cannot be held to be criminal unless there is a clear and unequivocal expression of the legislative intent to make them such.").

State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 972, 25 N.W.2d 824, 826, tersely states: "It is the fundamental rule * * * that no one may be required * * * to speculate as to the meaning of penal statutes."

If the legislature intended to prohibit use of any milk fat in margarine it could easily have said so in language clearly understandable, such as, e.g., "Margarine shall not contain milk fat." Not only did the legislature not do so but, as previously explained, it struck from what is now 191.6 similar language. If the legislature had the intent defendants contend for, it is not too much to ask that it give expression thereto more clearly than it has done.

In the interpretation of 190.1(2) it is significant the legislature included within the definition of many foods other than margarine, in the same section, language somewhat similar to that quoted last above which clearly indicates an intent to prohibit or limit use of certain ingredients in the product. Sub-

sections 9, 33, 34, 35c, 36a and c, 38, 41, 42, 47, and 48. See City of Nevada v. Slemmons, 244 Iowa 1068, 1072, 59 N.W.2d 793, 795, 43 A. L. R.2d 693.

▮▮▮ To defendants' repeated assertions the legislature intended to prohibit use of milk fat in margarine we may say the intent of the legislature which is controlling is to be gathered from the statutes themselves. It is our duty to give them the interpretation their language calls for and not to speculate as to probable legislative intent apart from the wording used. In re Guardianship of Wiley, 239 Iowa 1225, 1231, 1232, 34 N.W.2d 593, 596, and citations (" 'We do not inquire what the legislature meant. We ask only what the statute means.' ") ; Young v. O'Keefe, supra, 246 Iowa 1182, 1188, 69 N.W.2d 534, 538; Byers v. Iowa Employment Sec. Comm., 247 Iowa 830, 833, 76 N.W.2d 892, 893, 894.

It is of course true, as defendants suggest, that chapter 97 should be read as a whole in determining the legislative intent in enacting 190.1(2). Everding v. Board of Education, 247 Iowa 743, 747, 76 N.W.2d 205, 208, and citations; City of Nevada v. Slemmons, supra, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794. But this does not aid defendants. They call attention to no provision of the act and we find none which prohibits milk fat in margarine. Certainly there is no such prohibition clearly stated. To the contrary, section 191.6 indicates an intent to permit milk fat by authorizing adoption of the federal standard.

▮▮▮ The views we have expressed are conclusive against defendants' contention Imperial is unlawfully adulterated because of its milk fat content. Section 190.3 quoted near the outset hereof, so far as pertinent, merely provides food shall be deemed adulterated if it does not conform to the standards established by law. (As stated, our Department of Agriculture had adopted no standard for margarine.) Margarine cannot be deemed adulterated under 190.3 unless it does not conform to 190.1(2) which concededly establishes the standard for the product. Nor does the general prohibition in 189.15, also previously quoted, against manufacture or sale of any adulterated product aid defendants in the absence of some prohibition against use of milk fat in margarine.

470

The remaining section to which defendants now call attention is 190.5, quoted above. Incidentally it is not mentioned in the letter of the assistant attorney general before referred to. It has no application to margarine. By its terms it applies only to the designated forms of milk, including cream, and to "ice cream, or any *fluid* derivatives of any of them * * *." Scope of this section, designed to prohibit sale of "filled milk", and similar to laws passed in 34 other states, finds some explanation in United States v. Carolene Products Co. (Stone, J.), 304 U. S. 144, 58 S. Ct. 778, 82 L.Ed 1234. One objection urged to the Federal Filled Milk Act (21 U. S. C. A., sections 61–63) was that it was not extended to margarine or other butter substitutes. See 304 U. S. at page 151, 58 S. Ct. at 783, 82 L. Ed. at 1241.

Defendants remind us that courts give weight to the interpretation placed upon statutes of doubtful meaning by administrative officials charged with their enforcement. Of course this is true particularly where a definite interpretation has been in force for a considerable time. School District of Soldier Twp. v. Moeller, 247 Iowa 239, 250, 73 N.W.2d 43, 49, and citation. However, such interpretation, even where supported by an official opinion of the attorney general, is not binding on us and it is our duty to make independent inquiry as to the interpretation to be placed upon the statutes involved. City of Nevada v. Slemmons, supra, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794, 43 A. L.R.2d 693.

The chief of the dairy and food division of our department of agriculture testified it was their interpretation it was the intent of the legislature that no milk fat would be included in margarine. And the assistant attorney general's letter states, "190.1(2) requires that margarines not contain milk fats." However, this position was not entirely adhered to upon the trial when, as pointed out, it was stipulated the department's interpretation of 190.1(2) is that use of skim, or dry skim, milk (which contains some milk fat) is permitted.

There is no evidence of any ruling of the department, prior to its letter to Lever Brothers, setting forth its interpretation of the statutes. The testimony indicates this is its first attempt to prevent sale in Iowa of margarine on the ground it contains

some milk fat although such sales have not been uncommon. So there is not a very persuasive showing of a definite administrative interpretation of long standing. Nevertheless we have given defendants' view of the law careful, respectful consideration. After doing so, as we have indicated, we must say we are unable to agree with it.

▪ Defendants suggest Imperial has failed to follow the labeling and packaging requirements of section 191.2(3) and the restrictions upon advertising of section 191.3. It is conceded no issue was raised regarding advertising and it seems equally clear there was no issue in the trial court as to labeling and packaging. This appears to be an attempt by defendants to mend their hold. Further, the agreed record in this court does not show any violation of labeling and packaging requirements.

We think plaintiffs are entitled to a declaration that sale of Imperial margarine in Iowa is not illegal on the ground it contains about 2% butterfat and an injunction against interference with their business on such ground. For the entry of such a decree the cause is—Reversed and remanded.

All JUSTICES concur except SMITH, J., not sitting.