## The People of the State of Illinois, Plaintiff-Appellee, v. Marie Garcia, Defendant-Appellant.

### Gen. No. 62–M–3.

Fourth District.
September 5, 1962.

James P. Shannon, of Carlyle, for appellant.

Joseph B. Schlarman, State's Attorney of Clinton County, Carlyle, for appellee.

HOFFMAN, JUSTICE.

This is an appeal from a judgment of the County Court of Clinton County, after a trial before the court without a jury, finding the defendant guilty of fornication and sentencing her to the State Reformatory for a period of 1 year.

The Information filed by the State's Attorney was in one count and charged the defendant with having lived in an open state of adultery and fornication with one Robert Giller on the 11th day of August, 1961. No stenographic report of the evidence was taken, and

no reporter was present during the trial. The facts are referred to us by stipulation of the parties, in which the trial judge concurs. In full, the pertinent facts are as follows:

"Three witnesses testified on behalf of the State, namely, Harold Cook, Henry Klutho, Clinton County Sheriff and William Nettles, Clinton County Deputy Sheriff.

"Harold Cook testified that the defendant, Marie Garcia, and Robert Giller called for him, in Giller's truck, at his home in Carlyle, Illinois, about 2:00 a. m. of the morning of August 11, 1961. That Giller parked his truck at his house and that he, Harold Cook, drove his car to Marie Garcia's home. That the three of them arrived at Marie Garcia's home in Carlyle, Illinois, where in the company of each other, Marie Garcia's father and another female (name unknown), they proceeded to drink beer at a table in the kitchen. That later he and the woman who was with him went into a bedroom where he had sexual intercourse with her. That he saw Marie Garcia and Robert Giller go into 'another room.' That upon his return to the kitchen about 9:30 a. m. Marie Garcia and Robert Giller were there and they remained there in the house until the officers came and took them to the County Jail.

"Sheriff Klutho testified that on the night of August 6, 1961, he found Marie Garcia and Robert Giller entwined in the arms of each other in Giller's auto parked in the street near the home of the said Marie Garcia. That the skirt of said Marie Garcia was raised with her private parts exposed. . . .

"William Nettles testified that he was present at the time of arrest on the morning of August 11,

91

1961. That all parties were in the kitchen and there was evidence of beer drinking. That the defendant, Marie Garcia, and Robert Giller were in the kitchen at that time."

The defendant did not testify.

From these facts, and these alone, we must decide whether the defendant and Robert Giller "lived together in an open state of adultery and fornication" as charged in the Information.

The old Criminal Code, which covers these proceedings, required that a defendant live together with another person in an *open state* of adultery or fornication before a conviction could stand. (Ill Rev Stats 1961, c 38, § 46, italics ours.)

There is an amazing paucity of authority in Illinois as to what constitutes living together "in an open state." Actually, there have been only 3 cases referred to us on this point: Searls v. People, 13 Ill 597; Lyman v. People, 198 Ill 544, 64 NE 974; and, People v. Potter, 319 Ill App 409, 49 NE2d 307.

In Searls v. People, supra, the Supreme Court, in construing the statute in question said on page 598 of 13 Ill:

"In order to constitute this crime, the parties must dwell together openly and notoriously, upon terms as if the conjugal relation existed between them. In other words, they must cohabit together. There must be an habitual illicit intercourse between them. The object of the statute was to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy, which outrages public decency, having a demoralizing and debasing influence upon society. They may indeed live together in the same family, but if apparently chaste, regu-

larly occupying separate apartments, a single instance of illicit intercourse surely would not constitute the crime of living together in an open state of fornication."

In Lyman v. People, supra, relied on by the State, the Supreme Court adopted the opinion of the Appellate Court and found that the conclusion from all the facts was irresistible that the parties "lived together openly as husband and wife live together, occupied the same room and bed at night, rode about the country together, and generally followed the course of conduct toward each other which husband and wife are accustomed to, for about 4 weeks." (page 550 of 198 Ill)

In the Lyman case the offense was laid on a single day, as in the instant case, and the state here relies on language in that case to the effect that it is not necessary that the illicit relationship continue for any definite length of time, "it may be sufficient that it is for a day, only, if it is with an intention of continuance." (page 548 of 198 Ill)

In People v. Potter, supra, Mr. Justice Bristow, speaking for this court, analyzed the foregoing cases, and citing from them and other authorities concluded that it was not the object of the statute to establish a censorship over the morals of the people nor to forbid and punish furtive, illicit interviews between the sexes, however frequent and habitual their occurrence; but its purpose was only to make such acts punishable as it plainly designates, which such acts are those which necessarily tend by their openness and notoriety, or by their publicity, to debase and lower the standard of the public morals.

The State, in its brief here, agrees with the foregoing statement found in People v. Potter, and it should be noted that the new Criminal Code, effective January

1, 1962, requires that the behavior be "open and notorious." (Ill Rev Stats 1961, c 38, § 11–8)

Turning to the instant case, we can find nothing in the facts, as they are given to us, which brings the reported actions of the defendant here within the rules above enunciated. To rehash these facts would serve no useful purpose. Suffice it to say that the affair of August 11 and the incident of August 6 are insufficient, standing alone, to establish the "open state" of living which is required to bring such activity within the statute. Moreover, there is no evidence of an intention to continue the illicit relationship so as to bring the matter within the rule of Lyman v. People, supra. As disgraceful as this activity was, it was not a crime under our statute. We must reverse.

Reversed.

SCHEINEMAN, P. J. and CULBERTSON, J., concur.